**Kai He WANG, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 03–70500.
Agency No. A77–957–518.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 2004.

Decided June 24, 2004.

Jisheng Li, Esq., Law Office of Jisheng Li, Honolulu, HI, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, District Counsel, Esq., Office of the District Counsel, Department of Homeland Security, Honolulu, HI, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, David V. Bernal, Attorney, Ernesto H. Molina, Jr., Earle B. Wilson, Esq., Anthony P. Nicastro, Esq., U.S. Department of Justice, Washington, DC, for Respondent.

Before FARRIS, NOONAN, and RAWLINSON, Circuit Judges.

## MEMORANDUM *

Kai He Wang, a native of the Peoples Republic of China, petitions for review of the Board of Immigration Appeals' affirmance of an immigration judge's denial of his applications for asylum and withholding of removal. We grant the petition.

■ The IJ did not cite "specific, cogent reason," to justify her adverse credibility determination, see de Leon–Barrios v. INS, 116 F.3d 391, 393 (9th Cir.1997), nor were those reasons supported by substantial evidence. Gui v. INS, 280 F.3d 1217, 1225 (9th Cir.2002). The IJ's primary reason for finding Wang not credible was his failure to specify in his airport interview that his wife had been forcibly sterilized. However, we hesitate to assign much impeachment value to omissions from airport interview statements; many arriving aliens are reluctant to reveal episodes of persecution and, as in this case, there often is little known about the circumstances of the interviews to ensure their accuracy. Singh v. INS, 292 F.3d 1017, 1021, 1023 (9th Cir.2002); see also Balasubramanrim v. INS, 143 F.3d 157, 162 (3d Cir.1998). More important, Wang's testimony did not vary significantly from his interview statement. In the interview, Wang stated that he had left China "[b]ecause of the birth control policy ... government agents are after me for fines as a result of my having borne more than one child. The fines are stiff for a man of my meager means." The fact that, upon arrival in this country,

Wang emphasized his debts over an event that occurred 10 years earlier is understandable and plausible. The IJ erroneously failed to consider "plausible and reasonable explanations for" this minor inconsistency. Chen v. INS, 266 F.3d 1094, 1100 (9th Cir.2001), overruled on the other grounds by INS v. Ventura, 537 U.S. 12, 18, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).

■ The IJ also faulted Wang for failing to state in his asylum application that government officials seeking to collect the "extra birth" fine had beaten him, a fact that he mentioned in his testimony. But Wang did indicate that officials had "raided" his home, a term that connotes some degree of strong-arm tactics by law enforcement officials. Webster's Third New Int'l Dictionary, 1875 (1976) (defining "raid" as "... a sudden attack or invasion by officers of the law ..." Further, "[w]e hesitate to find that one seeking asylum must state in his or her application every incident of persecution lest the applicant have his or her credibility questioned if the incident is later elicited in direct testimony." Pop v. INS, 270 F.3d 527, 531–32 (9th Cir.2001) (citation omitted). Wang's failure to specify each blow dealt by raiding officials is not a cogent reason for the IJ to discredit him.

■ The third inconsistency the IJ cited was between Wang's asylum application, where he stated that his address for the previous five years was in his hometown, and his testimony, where he stated that after the raid, he lived in another province for seven years to avoid fine-collecting officials. There is no inconsistency here. Wang never registered his new address because he went into hiding; thus, his address of record would logically remain

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

the same during that period. More important, in another section of his asylum application, Wang did state that after being raided, he "stayed away from home and worked odd jobs in other towns." The IJ erred in concluded that this nonexistent discrepancy discredited Wang.

█ The IJ also noted discrepancies in the documents presented by Wang regarding the dates of his marriage and of the birth of his first child. However, we have recently found that similar inaccuracies in Chinese birth and marriage records equally consistent with clerical error as they are of forgery. See *Wang v. INS*, 352 F.3d 1250, 1254 (9th Cir.2003). The IJ also was suspicious that Wang never claimed to have been fined for marrying too young. But, as the IJ noted, the Country Report on China indicates that enforcement of family planning policies in Wang's province were flexible and inconsistent. In light of this, it is just as likely that Wang simply was lucky that he avoided the early marriage penalty. In any event, whether and when Wang married, had his first child, or was fined for early marriage, were not in dispute, nor were they relevant to his claim that his wife was subsequently sterilized and his family fined for over-birth. These alleged inconsistencies cannot seriously be viewed as attempts to enhance Wang's claim. *Shah v. INS*, 220 F.3d 1062, 1068 (9th Cir.2000).

█ Finally, the IJ faulted Wang for not including more "details about how [his wife] came to be sterilized." It is unclear what level of detail Wang needed to provide to be believed by the IJ. In his asylum application and testimony, Wang explained that his wife was forcibly sterilized, leaving little to the imagination. Given Wang's unfamiliarity with English and his terse answers to many question, it was unreasonable for the IJ to doubt

his credibility based on his failure to be more articulate or detailed in his description of persecution. *See Jin Shui Qiu v. Ashcroft,* 329 F.3d 140, 150 (2d Cir.2003) (faulting BIA's "unreasonable and under-explained demands for greater testimonial specificity and corroboration").

A reasonable adjudicator would be compelled to conclude that the factual findings underlying the IJ's adverse credibility ruling were not supported by substantial evidence. *Singh v. Ashcroft,* 301 F.3d 1109, 1111 (9th Cir.2002). Since the IJ denied relief based solely on an adverse credibility finding, we remand this matter to the BIA to determine whether, accepting Wang's testimony as true, he is eligible for asylum and withholding of removal. *Ventura,* 537 U.S. at 18, 123 S.Ct. 353.

PETITION GRANTED.