**Chun He LI, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–72689.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 2004.

Filed Aug. 5, 2004.

Bruno Joseph Bempi, Hempstead, NY, for the petitioner.

Earle Wilson and Ernesto H. Molina, Jr., United States Department of Justice, Washington, D.C., for the respondent.

Before FARRIS, NOONAN, and RAWLINSON, Circuit Judges.

FARRIS, Senior Circuit Judge:

Chun He Li, a native of the Peoples Republic of China, petitions for review of the Board of Immigration Appeals' final order affirming an Immigration Judge's decision to deny his request for asylum and withholding of removal. Li alleges persecution by the Chinese Government. He asserts that he and his wife were arrested and fined, and that his wife was forcibly sterilized, pursuant to the PRC's one-child policy. Our review ends if there is evidence to support the IJ's adverse credibility decision. There is. We therefore deny the petition.

### Background

Upon his arrival in the United States on May 4, 1992, Chun He Li applied for admission into the country. After an interview with INS officials, he was placed in exclusion proceedings and released into the community pending a hearing. Li failed to appear at the hearing, and was ordered deported *in absentia*. In 1992 and 1993, Li submitted three separate asylum applications, claiming he was persecuted in China because he and his wife had been fined for having too many children.

In 1999, Li filed a motion to reopen, which was granted. A hearing was held on August 26, 1999, at which Li conceded removability, and sought asylum and withholding of removal, alleging that he and his family had been persecuted by PRC government officials enforcing the country's one-child policy. In addition to his earlier claim that he had been fined, Li asserted for the first time that his wife had been forced to undergo sterilization.

In support of his claim, Li testified at the hearing that he married his wife, Feng Ying Chen in 1978. Their first son was born in 1979, while a second was born in 1981. According to Li, shortly after the second birth, government officials fined them for having too many children, then required Feng Ying to have an IUD inserted.

Due to an apparent malfunction, Feng Ying became pregnant again and gave birth to a third son on February 21, 1984. Li testified that when officials discovered this, they arrested him and told him that he would undergo mandatory sterilization. Fearing the procedure would destroy his ability to work, Li begged officials to sterilize his wife instead. They agreed, and took Feng Ying into custody the next day and forcibly sterilized her at a local commune hospital. Li testified that the family was also fined 8,000 yuan for having their third child, and told they would be jailed if the fine was not paid.

Because they could not afford the fine, Li's family moved to Guan Zhou City, located about 20–hours by train from their hometown. They lived there for seven years, during which they avoided government officials seeking to collect the fine. Later, Li learned that after the move, government cadres went to his house to collect the fine. When they discovered he had fled, the officials ransacked his house and seized his belongings.

Li testified that he fled China in late 1991, fearing that the outstanding penalty would result in additional jail time. At the time of the asylum hearing, Feng Ying and his children had moved in with her parents, who live in their home province. Although Feng Ying occasionally visited their home village, she feared that officials would find her and arrest her for failing to pay the outstanding fine.

Li also presented x-rays, purportedly of Feng Ying, that were taken in 1984. A doctor examined them in 1999 and concluded they were consistent with a tubal ligation performed on an unknown patient at an unknown time. Li also submitted a photograph of Feng Ying depicting a scar on her abdomen. We recognize that this testimony, if credible and unrefuted, would establish persecution.

The record includes Li's sworn interview statement to Immigration Inspector Richard Westlake at the Honolulu Airport on May 4, 1992. Inspector Westlake testified at the hearing and described the procedures utilized in 1992 for interviewing arriving aliens. INS also presented Li's three prior asylum applications. It is undisputable that he made a stronger case at the August 26, 1999 hearing than he had on any of three prior occasions. The question is whether there are sufficient inconsistencies for an IJ to reasonably conclude that the 1999 testimony was not credible.

At the close of the hearing, the IJ denied Li's request for asylum and withholding, finding him not credible. Li appealed the IJ's ruling, which the BIA affirmed without comment.

### Discussion

■ Because the BIA affirmed the IJ without opinion, we review the IJ's ruling. *Falcon Carriche v. Ashcroft,* 350 F.3d 845, 849 (9th Cir.2003).

■ To qualify for asylum, Li was required to prove he was unable or unwilling to return to China "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); 8 U.S.C. § 1158(b)(1). "[A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for

failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion." 8 U.S.C. § 1101(a)(42)(B). Spouses of those forcibly sterilized are deemed "refugees" under this section as well. *Li v. Ashcroft*, 356 F.3d 1153, 1157 (9th Cir.2004).

■ To establish eligibility for withholding of removal, Li was required to prove that if removed to China, it is more likely than not that he will be persecuted on account of a statutorily-protected ground. *Al–Harbi v. INS*, 242 F.3d 882, 888 (9th Cir.2001); 8 U.S.C. § 1231(b)(3).

■■ We review a ruling denying asylum or withholding of removal for substantial evidence. *Baballah v. Ashcroft*, 335 F.3d 981, 987 (9th Cir.2003). "It can be reversed only if the evidence presented . . . was such that a reasonable fact finder would have to conclude that the requisite fear of persecution existed." *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). The IJ found Li's testimony incredible. We review under the same basic standard. *Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir.2002). While accorded deference, a credibility determination "must be supported by a specific, cogent reason." *de Leon–Barrios v. INS*, 116 F.3d 391, 393 (9th Cir.1997) (citation omitted.) An adverse credibility ruling will be upheld so long as identified inconsistencies go to the "heart of [the] asylum claim." *Singh v. Ashcroft*, 301 F.3d 1109, 1111 (9th Cir.2002).

■ The IJ noted that Li filed three prior asylum applications containing key omissions and discrepancies. For instance, those applications failed to mention that Li's wife had been forcibly sterilized after Li was detained and threatened with sterilization himself. In fact, Li denied that he or any member of his family had ever been arrested, which contrasted with testimony at the hearing. Moreover, Li testified that he was assessed 200 Yuan after the birth of his second child and 8000 Yuan after the third. The earlier applications stated that he was fined 3000 Yuan for his second child and 3500 for his third. Whether these are "significant and relevant discrepancies" that undermine Li's credibility and support the IJ's decision to disbelieve him is a question about which reasonable minds may differ. *Lata v. INS*, 204 F.3d 1241, 1245 (9th Cir.2000). But our inquiry is simply whether a reasonable IJ could so conclude.

Li argues that the IJ erred in considering his prior asylum applications because there was no evidence that a qualified legal professional who spoke his language filled out those forms. Contrary to these assertions, Li testified that the applications were completed at a law firm by an assistant who reviewed the forms with him in his native language. Li signed them under penalty of perjury. They had impeachment value as prior inconsistent statements.

The IJ also noted that Li failed to mention any persecution when interviewed by Inspector Westlake in 1992. When asked if he left China out of fear of being arrested or harmed by government officials, Li responded, "[n]o. I left China because I was deceived by people who promised me a good life overseas. The man said it would be easy for me to make money overseas." When asked if he had ever been mistreated by Chinese authorities, Li responded, "I have never been mistreated by the government because I never did anything wrong." *Id.* This conflicts with Li's subsequent claims.

■ We hesitate to view statements given during airport interviews as valuable impeachment sources because of the con-

ditions under which they are taken and because a newly-arriving alien cannot be expected to divulge every detail of the persecution he or she sustained. *See Singh v. INS,* 292 F.3d 1017, 1021–24 (9th Cir.2002); *see also Balasubramanrim v. INS,* 143 F.3d 157, 163 (3d Cir.1998). But here, the IJ heard substantial evidence from Inspector Westlake about the procedures used to ensure that interviews were accurately understood and recorded. Both the INS supervisor and the interpreter would carefully question and evaluate the alien before the interview; if any sign of a language barrier was detected, the interview would be halted until an appropriate interpreter could be found. AR 80–81. After the interview, the interpreter would review questions and answers line-by-line with the alien to ensure there were no translation problems and to correct any misstatements that may have occurred. AR 83. Although current counsel for Li speculates there may have been translation problems, there is nothing in the record to suggest this. *Compare Singh,* 292 F.3d at 1022–24 (evidence presented at asylum hearing that translator used in airport interview spoke only Hindi, a language that the alien spoke only "a little."); *Balasubramanrim,* 143 F.3d at 163–64 (evidence presented that alien was interviewed in English with no translator used). Our inquiry ends if the IJ could reasonably conclude that the sworn interview statement was a reliable impeachment source.

Further, this is not a case where Li simply failed to mention an instance of abuse or to provide as much detail in his airport interview. *Compare, Singh,* 292 F.3d at 1021 ("Requiring evidentiary detail from an airport interview not only ignores the reality of the interview process, but would, in effect, create an unprecedented preasylum application process.") Rather, Li affirmatively denied any mistreatment by the Chinese Government, stated that neither he nor his family had ever been arrested, and explained that he left China for financial reasons. The IJ could reasonably conclude that there is a valid discrepancy between the airport interview and his 1999 testimony. We cannot say on this record that the IJ lacked a basis for the credibility determination.

Li contends the IJ failed to give sufficient weight to his testimony that he did not mention persecution to Inspector Westlake out of fear of retaliation from Chinese officials. *See Chen v. INS,* 266 F.3d 1094, 1100 (9th Cir.2001) (IJ errs in failing to consider "[a]ll plausible and reasonable explanations for any inconsistencies.") overruled on other grounds by, *INS v. Ventura,* 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002). The record reflects that the IJ did address Li's explanation, and noted that immediately after the interview, Li disappeared and failed to attend the exclusion hearing. Within months of that, Li filed three consecutive asylum applications none of which mentioned his 1999 claim of forced sterilization.

We do not ignore that Li had less reason to mention his wife's sterilization in 1992 and 1993 because at the time, forced sterilization did not constitute persecution as a matter of law. *See In re Chang,* 20 I. & N. Dec. 38 (BIA 1989). But neither was being fined for having too many children, an allegation Li included in all three of his prior asylum applications. The IJ is not unreasonable in considering that, if truthful, Li would have thought to mention his most serious allegation of mistreatment when he detailed the persecution he and his family allegedly endured.

Another factor the IJ considered was the fact that Li remained in China for seven years after being fined without being jailed. The IJ also gave weight to the

fact that Li's wife had moved back to their home province and occasionally visited their home village, without being arrested for the outstanding fine. Li's continued presence in China does not support a lack of credibility ruling since the record reflects that he essentially went into hiding in order to avoid government officials, but the fact that his wife has traveled freely to their home town without any trouble may reasonably be considered inconsistent with Li's claim that his family was so afraid of being arrested that it was forced to go deep into hiding. *See Wang v. INS*, 352 F.3d 1250, 1257 (9th Cir.2003) (conduct inconsistent with alien's claim that he fled home to avoid family planning policies went to the heart of asylum claim.)

Since she had a basis for doubting Li's credibility, the IJ could properly consider whether there was record evidence to corroborate his claim. *See Chebchoub v. INS*, 257 F.3d 1038, 1044–45 (9th Cir.2001). The lack of other documentary evidence, such as a letter from Li's wife or additional hospital records could reasonably be considered.

We recognize that the IJ cited other purported inconsistencies that in our view are either factually unsupported or irrelevant. For instance, the IJ noted that Li failed to state he is Catholic on his asylum application. But as Li explained to the IJ, his religion was not relevant to his claim of persecution. The alleged inconsistency does not go to the heart of Li's claim. *Wang*, 352 F.3d at 1254.

The IJ was skeptical over the lack of any evidence that Li had been fined for marrying too young, or that his wife had been required to submit to gynecological exams after her IUD was inserted in 1981. This, the IJ found, "weakened [Li's] over-

all credibility" since the country report indicated that early marriage fines and regular IUD inspections were common methods of enforcing China's one-child policy. We reach a different conclusion. Li had little motive to lie about these facts because the additional fines and mandatory exams would only bolster his claim by emphasizing the harshness of China's policies and the constant scrutiny under which his family lived. Further, whether Li was fined for early marriage or his wife subjected to exams had little to do with his claim that years afterward, there was a pregnancy that led to a fine and forced sterilization. These alleged discrepancies have no bearing on credibility. *See Shah v. INS*, 220 F.3d 1062, 1068 (2000).

■ Although some of the factors the IJ relied upon are either unsupported or irrelevant, "[s]o long as one of the identified grounds is supported by substantial evidence and goes to the heart of [Li's] claim of persecution, we are bound to accept the IJ's adverse credibility finding." *Wang*, 352 F.3d at 1259. The IJ cited cogent and factually supported reasons to doubt Li's credibility that strike at the heart of his claim. We uphold the ruling denying Li asylum and withholding of removal. *See INS v. Cardoza–Fonseca*, 480 U.S. 421, 440–41, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (failure of proof on asylum claim necessarily fails under stricter withholding of removal standard).[1]

Petition **DENIED.**

NOONAN, Circuit Judge, dissenting:

Here is the heart of Li's asylum claim based on probable future persecution: A citizen of China, Li violated the law of China by fathering three children. A vio-

---

1. My brother and I differ on what is the appropriate appellate function. He would re-

try. I am content to review.

lator of the law of China, he has every reason to fear persecution for his violations. This fear of probable future persecution entitles him to asylum in this country. Nothing in the IJ's decision offers reason to impugn the testimony supporting the claim. Nothing in the opinion of this court offers reason to impugn the claim. Indeed, the IJ found credible Li's testimony that he had three sons. Nonetheless, the IJ denied Li any consideration on the merits of his probable future persecution claim.

Making matters worse, the IJ discredited Li's presentation regarding past persecution based on the sterilization of Li's wife by relying on forbidden grounds for an adverse credibility ruling. To affirm, the court ignores two of our central rules regarding adverse credibility findings: the rule that adverse credibility findings cannot be justified by speculation or conjecture, *Ge v. Ashcroft*, 367 F.3d 1121, 1124 (9th Cir.2004), and the rule that "[a]n adverse credibility finding is not based on substantial evidence when the BIA or the IJ did not comment on an applicant's explanation, nor suggest any reason that it found his explanation not credible." *Guo v. Ashcroft*, 361 F.3d 1194, 1201 (9th Cir. 2004) (internal quotation marks and brackets omitted).

Three truths are not challenged by this court or by the opinion of the IJ:

1. China forbids married couples to procreate more than one child and punishes those who do.

2. The Congress of the United States has determined that such a governmental policy, deeply offensive as it is to human dignity, is a form of persecution from which the United States will provide asylum.

3. Chun He Li fathered three sons in China. They are now aged 19, 17 and 15.

On these undoubted facts and under controlling law, Li and his wife face the probability of persecution in China. Nothing in the discrepancies alleged by the INS alters this probability.

Inconsistencies must "go to the heart" of the asylum claim to justify an adverse credibility finding. *Singh v. Ashcroft*, 301 F.3d 1109, 1111 (9th Cir.2002) (internal quotation marks omitted). Very recently, we had to reverse a decision of the BIA denying an applicant whose wife was forced by Chinese authorities to undergo two abortions because her pregnancies violated the government's one-child policy. The denial was based on the IJ's adverse credibility determination. That determination was based on the IJ's speculation. *Ge v. Ashcroft*, 367 F.3d at 1124. The instant case is scarcely stronger for the INS. It is all too reminiscent of yet another case in which we were compelled to reverse the BIA because the IJ "picked at minor memory laps and inconsistencies on issues at the periphery." *Kebede v. Ashcroft*, 366 F.3d 808, 809 (9th Cir.2004). We reminded the BIA:

> Although we review an adverse credibility finding under the deferential "substantial evidence" standard, *He v. Ashcroft*, 328 F.3d 593, 595 (9th Cir.2003); *Alvarez–Santos v. INS*, 332 F.3d 1245, 1254 (9th Cir.2003), such a finding "must be supported by a specific, cogent reason." *de Leon–Barrios v. INS*, 116 F.3d 391, 393 (9th Cir.1997) (quoting *Berroteran–Melendez v. INS*, 955 F.2d 1251, 1256 (9th Cir.1992)). The inconsistencies on which the IJ relied are not "significant and relevant" and do not support an adverse credibility determination. *Lata v. INS*, 204 F.3d 1241, 1245 (9th Cir.2000).

*Id.* at 810–11. No significant and relevant inconsistency undermines Li's presentation of his paternity and his consequent expo-

sure to reprisal by the draconian anti-population policy of China.

The sole hearing at which Li had the opportunity to testify before the IJ was conducted on August 26, 1999. At the conclusion of the testimony, the IJ dictated her decision. She then reviewed the written transcript of her decision, conscientiously noting that she did so "without benefit of Record of Proceedings." She failed to relate her reasons to his principal claim. What is worse, her reasons show her to be making up a case against an applicant she disfavors:

1. Li "did not appear interested in providing complete answers to the questions posed about his refugee claim. For example, applicant stated that he did not tell his current attorney that he is a Catholic, when she was filling out page 1 of the form I–589, because he didn't think it was necessary to tell her about it." As the court now notes, the information was indeed irrelevant. Why does the IJ pounce on his reticence?

2. The IJ impugned Li's credibility because he did not testify that he had been fined for marrying too young, and he did not testify that his wife had been required to submit to gynecological exams after her IUD was inserted soon after the birth of their second child. As the court now notes, these matters had "little to do" with the forced sterilization. And these matters also have little to do with the probability that Li will be persecuted for being a father of three. Even more notable is that the very same IJ, ruling against another asylum petitioner from the same province (Fujian) seeking relief from China's population policy, went out of her way to note that the State Department had reported that China's policy was not consistently enforced in every aspect. *See Wang v. Ashcroft*, 102 Fed.Appx. 620, 2004 WL 1435190 (9th Cir. June 24, 2004) (reversing IJ's determination); *see also* United States Department of State, *China: Country Conditions and Comments on Asylum Applications* 39 (1995). There was no reason for the IJ to expect enforcement in every aspect here.

3. In his airport interview and in his 1992 and 1993 applications Li did not mention his wife's forced sterilization. These omissions were treated by the IJ as undermining Li's case. But the court now notes: "Li had less reason to mention his wife's sterilization in 1992 and 1993 because, at the time, forced sterilization did not constitute persecution as a matter of law." Not only did Li have less reason to mention the sterilization, he had no reason at all to mention it. What benefit would he have gained by citing a fact that at the time had no bearing on his asylum application? Was he supposed to have anticipated Congress's later action in changing the law and the BIA's extension of the law to cover sterilization of a spouse? Was his credibility to be doubted because he did not recite every indignity and every misery put upon him and his wife for procreating three children?

4. The IJ also found Li's credibility subverted by his testimony that he remained in China seven years after the forced sterilization of his wife. The court now dismisses the IJ's inference. Li was in hiding; he was not openly present in China.

5. The IJ gave Li's credibility another knock because the "fine amount noted in the earlier asylum applications is greatly inconsistent with the fine amount applicant testified to during the hearing, and provided in his 1999 application." The precise amount of the fines is not a material factor in Li's application. That Li was fined—and fined amounts that were substantial for a Chinese peasant—is the salient point in both his application and in his testimo-

ny. *Cf. Singh v. Ashcroft,* 301 F.3d 1109, 1113 (9th Cir.2002) (holding that a petitioner's confusion over the location of a political rally he said he attended could not support an adverse credibility finding because the material point was that the petitioner attended a political rally, not the rally's location). To hang Li for not tailoring his testimony to an application made seven years earlier is to snap at a gnat. By binding circuit authority, we must disregard such irrelevancy. *Wang v. Ashcroft,* 341 F.3d 1015, 1021 (9th Cir.2003); *Singh,* 301 F.3d at 1111, 1113. There is no contradiction going to the heart of his asylum claim.

6. The IJ doubted that Li's wife had been involuntarily sterilized in 1984. First, the IJ found that the x-rays were "taken in 1998, some 14 years after the alleged operation." But, at the most, the IJ's skepticism here went to the corroborating evidence not to Li's own testimony. Second, the IJ declared that the sterilization "could have been voluntary, since she had three sons, whom they could barely support, in addition to supporting applicant's mother." But the IJ's reasoning at this point is sheer speculation. She had no basis for doubting Li, and so she shifts her ground and finds it "difficult to imagine" why Li didn't mention the surgery in 1992 and 1993 when forced sterilization was not a ground for asylum. The IJ made a guess and faulted Li because of it.

In sum, based on misinterpreting Li's candid testimony about hiding in China; exaggerating the significance of his memory of the fines; chastising him for not embroidering what he suffered as officials enforced the official population policy; guessing that his wife's sterilization was voluntary; and marveling at his non-assertions of a basis for asylum at times when it could not have been legally effective, the IJ found Li incredible on the issue of past persecution. In so finding, the IJ did not conduct herself as an impartial judge but rather as a prosecutor anxious to pick holes in the petitioner's story. No wonder, the court has not been persuaded by what the IJ focuses on.

But there is more. The IJ attached a sinister significance to the fact that Li's wife moved back to their home province and occasionally visited their hometown without being arrested for nonpayment of the fine. The court states that it was reasonable to deem the move and visits inconsistent with a family in hiding. But any inconsistency depends on speculation as to how a member of a family in hiding should behave. This conjectural model member of a fearful family must eschew all contact with her home village and scrupulously avoid living within the boundaries of her home province. And if the bonds of home sometimes draws her to her home village despite the risk, or if she resides within the forbidden boundaries, albeit laying low, then she has broken the rules for the IJ's speculative model of a family in hiding. Such speculation by the IJ or this court violates our precedent. *Ge v. Ashcroft,* 367 F.3d 1121, 1124 (9th Cir.2004).

In short, the IJ cobbled together, from her memory of the recent testimony, bits and pieces of Li's evidence and, with a persistence and an arbitrariness that do not bespeak dispassion, found Li not to be credible on the basis provided by her own speculation or on the basis of details entirely peripheral to Li's case.

The court now places most of its upholding of the IJ's credibility determination on Li's airport interview in which he denied that he had been persecuted in China. The court declares: "The IJ could reasonably conclude that there is a valid discrepancy between the airport interview and his 1999 testimony." But Li clearly and cogently explained why he spoke as he did at

the airport: "When I first came to the United States, the INS inspector asked me if the Chinese government ever persecuted me, and I always said no, at that time, because I was afraid the U.S. government would notify the Chinese government, and then, I will be sent back to China. I was very afraid that the INS would send me back to China, then I would definitely be jailed."

The court now says that "the IJ did address Li's explanation." Curiously, the court, although invited by this dissent to do so, is not able to cite to any page of the administrative record for the statement. In fact, the IJ makes absolutely no comment on Li's explanation. For the IJ and the court to attach any weight to Li's denial of persecution without consideration of his explanation is a clear violation of *Guo v. Ashcroft*, 361 F.3d 1194, 1201 (9th Cir.2004).

We cannot operate as a court if a panel feels free to disregard a precedent that it finds inconvenient. In the light of its disregard of binding authority, the court's effort to rehabilitate the airport interview has been expended in vain. And nothing in the airport interview rebuts Li's primary claim that he will face persecution as the father of three sons. What impartial fact finder would not be compelled to at least consider the merits of Li's claim that he will, more likely than not, be persecuted for having three sons if our pro-family values government returns him to his country of origin?

For the reasons stated, I respectfully and regretfully dissent.