**Hayk AYVAZYAN; Margarit Zeynalyan; Armen Ayvazyan, Petitioners,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 04–70109.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2006.

Filed Jan. 31, 2007.

Joseph S. Porta, Esq., Law Offices of Cohen Porta & Kim, Los Angeles, CA, Alan Aghabegian, Law Offices of Alan Aghabegian, Glendale, CA, for Petitioner.

District Counsel, Esq., Office of the District Counsel Department of Homeland Security, Los Angeles, CA, Ronald E. Le-Fevre, Chief Counsel, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Terri J. Scadron, Esq., Joshua E. Braunstein, Esq., U.S. Department of Justice Civil Div./Office of Immigration Lit., W. Manning Evans, U.S. Department of Justice Civil Division, Washington, DC, for Respondent.

534

Before: WARDLAW, PAEZ, and
BYBEE, Circuit Judges.

### MEMORANDUM *

Hayk Ayvazyan, his wife Margarit, and his son Armen petition for review of an order by the Board of Immigration Appeals ("BIA") denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We grant the petition, hold that the BIA's adverse credibility determination was not supported by substantial evidence, and remand to the BIA for further proceedings.

### I.

The BIA summarily affirmed the oral decision and order of the immigration judge ("IJ") without opinion. Thus, "we evaluate the IJ's decision as we would that of the Board." *Lanza v. Ashcroft,* 389 F.3d 917, 925 (9th Cir.2004). The IJ found that "none of the respondents was a credible witness," and on that basis denied all relief.[1] "We review an adverse credibility finding under the substantial evidence standard.... Although the substantial evidence standard is deferential, the IJ must provide a specific cogent reason for the adverse credibility finding." *Gui v. INS,* 280 F.3d 1217, 1225 (9th Cir.2002) (citation and quotation omitted). Further, "The IJ must have a legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief. Any such reason must be substantial and bear a legitimate nexus to the finding." *Id.* (citations and internal quotation marks omitted).

### II.

■ The IJ based his adverse credibility determination on "observation of the respondents as they testified, as well as the inconsistencies between their oral testimony and the written applications for asylum and supporting documents." "Here, however, we are not dealing with inferences based solely on demeanor, often described as testimonial inferences, as the IJ did not point to non-verbal communication as a basis for his decision." *Arulampalam v. Ashcroft,* 353 F.3d 679, 686 (9th Cir.2003) (citation and internal quotation marks omitted). For that reason, we do not defer to the cursory introductory prose about "observation" and instead find that "the IJ's credibility determination rested on factors concerning the nature of [petitioners'] testimony, all of which are ascertainable from the record and unsupported by it." *Id.*

■ The IJ found that the "chief inconsistency" in the testimony presented in the applications and at the merits hearing "concern[ed] the medical document." That document is a hand-written "certificate." Its English translation describes wounds consistent with Hayk's testimony about his beating. The certificate further explains that Hayk was "hospitalized" and "has received proper treatment." When questioned about the use of the word "hospitalized" in the certificate, both Hayk and Margarit consistently testified that treatment was rendered at their home. The explanation given by Hayk was that there must have been a mistranslation of the certificate. The IJ disbelieved this testi-

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Cir. R. 36–3.

1. Here, there were two asylum applications: one for Hayk and Margarit, and a second for Armen, who came to the United States almost two years after his parents. Armen's application was accompanied by an affidavit claiming that his alleged persecution by the police was precipitated by the events involving Hayk and his departure to the United States.

mony and found that the type of treatment received by Hayk was consistent with treatment at a hospital, rather than at home, because it "included IV injections and local anesthesia."

The IJ improperly grounded his adverse credibility determination on this supposed inconsistency. First, assuming that the certificate actually says in Armenian that Hayk was treated at a hospital, it directly undermines his claim that he was intimidated by the police out of seeking medical help. We have held that if "discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, [they] have no bearing on credibility." *Shah v. INS*, 220 F.3d 1062, 1068 (9th Cir.2000) (internal quotation marks omitted).

Second, the evidence strongly suggests that there was an error in the translation of the certificate. Both Hayk and Margarit testified in their native language of Armenian. In the context of live witness testimony, we have held that "faulty or unreliable translations can undermine the evidence on which an adverse credibility determination is based." *He v. Ashcroft*, 328 F.3d 593, 598 (9th Cir.2003). The IJ hinged his decision on the translated meaning of the word "hospitalized," yet he never asked the translator at the hearing to clarify the word, nor did he ask Hayk to inspect the original Armenian document and read the relevant portion into the record via the translator. Doing so would have eliminated any potential error or ambiguity in translation. The hospital certificate was translated by the same person who assisted Hayk with completing his asylum application. Hayk's asylum application does not demonstrate a high level of

proficiency in the use of the English language. This apparent lack of skill with the language undermines reliance by the IJ on the use of the word "hospitalized" in the translation of the hospital certificate.

Finally, it was improper for the IJ to speculate about the type of medical treatment customarily given at hospitals in Armenia as opposed to in one's dwelling. *See Kumar v. Gonzales*, 444 F.3d 1043, 1050–53 (9th Cir.2006).[2] This speculation was directly contradicted by testimony in the record that it is not unusual for people to receive medical treatment in their homes in Armenia. For these reasons, the IJ's adverse credibility determination could not properly be based on the hospital certificate.

### III.

■ The ancillary justifications for the IJ's adverse credibility determination are all either foreclosed by law or unsupported in the record. The IJ found that Hayk's story did not "give[ ] rise to a coherent claim as to why he would have been subjected to persecution in Armenia." This conclusion is belied by the 2001 State Department Country Report for Armenia contained in the record. That report notes that, "Members of the security forces routinely beat detainees during arrest and interrogation, arbitrarily arrested and detained persons without warrants, and did not respect constitutional protections regarding privacy and due process. Impunity remains a problem, and the Government rarely investigates abuses by members of the security forces." Hayk received a "severe reprimand and last warning for violation of internal discipline (disclosure of confidential data)." Given this reprimand

**2.** This sort of conjectural analysis could easily have reached the opposite result, *e.g.*, by concluding that anesthesia and intravenous treatment are medical services often performed in hospice and other home-treatment environments. Just like the conclusion reached by the IJ, this conclusion is unsupported in the record.

it is entirely plausible that Hayk would be singled out for persecution by security forces or their apparatchiks at the nuclear facility.

■■■ Hayk's failure to mention intimidating telephone calls on his asylum form is not a proper basis for making an adverse credibility determination. "It is well settled that an applicant's testimony is not per se lacking in credibility simply because it includes details that are not set forth in the asylum application." *Lopez–Reyes v. INS,* 79 F.3d 908, 911 (9th Cir.1996). We have also found that asylum forms "filled out by ... people who ... are unable to retain counsel should be read charitably, especially when it comes to the absence of a comprehensive and thorough account of all past instances of persecution." *Smolniakova v. Gonzales,* 422 F.3d 1037, 1045 (9th Cir.2005) (citations and internal quotations omitted; alteration in original). Finally, the claimed inconsistencies in testimony about Hayk's inability to speak after he was beaten appear to be based on a misunderstanding of the testimony by Margarit.

### IV.

■■■ The IJ also found that Armen's testimony was not credible-however, the testimony given by Armen only related to his experiences in Armenia when he was released from the military, over a year after Hayk and Margarit had fled. Even if we accept the IJ's determination as it relates to Armen's alleged experiences, there is no nexus between his testimony and the veracity of Hayk's claims. The facts of Armen's problems with security forces do not go "to the heart of the claims of persecution" presented in Hayk's application. *See Li v. Ashcroft,* 378 F.3d 959, 964 (9th Cir.2004). Thus, Armen's apparent lack of credibility is not a proper basis to reject Hayk's claim of asylum. To the extent that Armen's credibility bears on his individual likelihood of persecution in Armenia, it *may* be a proper basis to reject his application for asylum. However, because the IJ lumped the decision as to all members of the family together, we similarly hold that the adverse credibility determination as to all petitioners was not supported by substantial evidence.

We remand to the BIA under *INS v. Ventura,* 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002), to consider whether, taking their testimony as true, petitioners Hayk and Margarit are eligible for relief, and to separately consider the independent petition of Armen.

### PETITION GRANTED; REMANDED.

BYBEE, J., dissenting.

Given the substantial evidence standard, I cannot join my colleagues. We are only allowed to overturn a IJ's adverse credibility determination only if the evidence presented was "so compelling that *no reasonable factfinder* could find that [Petitioners were] not credible." *Farah v. Ashcroft,* 348 F.3d 1153, 1156 (9th Cir.2003) (emphasis added); *see also Wang v. INS,* 352 F.3d 1250, 1258 (9th Cir.2003). I find it difficult to say that "no reasonable factfinder" could agree with the IJ in this case.

The IJ found the Petitioners incredible based on both his observations and his review of their testimony and supporting documents. We have no basis for questioning the IJ's observations, and the IJ's finding that there is an inconsistency between Hayk and Margarit's testimony and the written documentation they supplied is supported by the record. Both testified that after Hayk was beaten he was treated at home by a doctor friend. Yet the only document they provided states that he was treated at the hospital. Hayk could have

actually been treated in the hospital as the certificate states and later, when appearing before the IJ, embellished his story. His story that police threatened him with further reprisals if he sought treatment at a hospital would have been diminished if he was, in fact, treated at the hospital.

The majority tries to minimize this discrepancy by blaming it on a translation error, yet Petitioners themselves supplied the translation in the supporting documents they submitted to the IJ. If there was an error in translation, it was the Petitioners' "burden [to] ensur[e] that translations and their transcription are correct and, if they are not, of properly raising the issue to the reviewing body or court." *Singh v. Ashcroft*, 367 F.3d 1139, 1143 (9th Cir.2004). The IJ noted in his opinion that he pointed out the inconsistency between the oral testimony and written documentation to Petitioners more than a month before he rendered his decision. Yet, Petitioners declined to provide an alternate translation. Moreover, the majority's attribution of error to the translation is nothing more than its own speculation; neither the Petitioners nor the court has attempted any alternative translation. Indeed, at oral argument, counsel for Petitioners admitted that he could not offer any alternative to the translation proffered by Petitioners.

These discrepancies could reasonably be interpreted as Petitioners' attempt to enhance their asylum claim. A reasonable factfinder could just as easily agree with the conclusions the IJ drew from the facts as the conclusion drawn by the majority. Where reasonable minds may differ, we must defer to the IJ's findings.

* This panel unanimously finds this case suitable for decision without oral argument. *See*

Accordingly, I would deny the petition. I respectfully dissent.