**Gursharan KAUR, Petitioner,**

v.

**Michael B. MUKASEY, Attorney General, Respondent.**

No. 05–70768.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 23, 2008.

Filed Nov. 18, 2008.

---

Robert Bradford Jobe, Esquire, Law Offices of Robert B. Jobe, San Francisco, CA, for Petitioner.

Ronald E. Lefevre, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, William C. Peachey, Esquire, Jem C. Sponzo, Esquire, U.S. Department of Justice, Washington, DC, Dennis M. Wong, Esquire, U.S. Department of Justice, Stockton, CA, for Respondent.

Before: BYBEE and BEA, Circuit Judges, and ROTH,\* Senior Circuit Judge.

## MEMORANDUM \*\*

Gursharan Kaur, a citizen of India, petitions for review of a Board of Immigration Appeals ("BIA") order affirming the Immigration Judge's ("IJ") adverse credibility finding and denial of Kaur's application for asylum, withholding of removal, and relief under the Convention Against Torture

("CAT"). We have jurisdiction pursuant to 8 U.S.C. § 1252, and we deny the petition. Because the parties are familiar with the facts, we recite them only as necessary.

The IJ did not err by relying on the asylum officer's notes and testimony because they constituted admissible substantial evidence of what Kaur had said. *See Li v. Ashcroft,* 378 F.3d 959, 962–63 (9th Cir.2004); *cf. Singh v. Gonzales,* 403 F.3d 1081 (9th Cir.2005).

Further, there is substantial evidence to support the IJ's adverse credibility finding. Although the IJ relied on eight discrepancies to find Kaur not credible, the IJ's finding will be upheld "[s]o long as *one* of the identified grounds is supported by substantial evidence and goes to the heart of [petitioner's] claim of persecution." *Wang v. INS,* 352 F.3d 1250, 1259 (9th Cir.2003) (emphasis added). Here, three of the grounds on which the IJ relied are supported by substantial evidence.

First, there is substantial evidence to support the IJ's finding of adverse credibility based on Kaur's inconsistent statements as to whether she was raped during her second arrest. According to Kaufman's testimony and notes from Kaur's asylum interview, Kaur stated an inspector raped her during her second arrest. Before the IJ, however, Kaur testified she was beaten but not raped during her second arrest.

Second, Kaur made inconsistent statements as to the dates she went into hiding. According to Kaufman's testimony and notes from Kaur's asylum interview, Kaur went into hiding from January 24, 1996, until March 1997. Before the IJ, however,

---

\* The Honorable Jane R. Roth, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

\*\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

Kaur testified that she went into hiding from January 1997 to March 1997.

Third, Kaur made inconsistent statements as to the dates of her father's last arrest. Kaufman testified that Kaur provided three different dates for the date of her father's last arrest: December 1996, December 1997, and March 15, 1999. When Kaufman asked Kaur why she stated three different dates, Kaur corrected herself and stated her father's last arrest was in March 1997. Before the IJ, however, Kaur testified that her father was last arrested in December 1996.

All three discrepancies go to the heart of Kaur's claim because she contends she and her father were persecuted in India because of their religion, and she therefore had to flee. She contends because of her fear that she will continue to be persecuted if she returns, she cannot return. Further, Kaur had an opportunity to explain the discrepancies before the IJ. *See Osorio v. INS,* 99 F.3d 928, 933 (9th Cir.1996).

**PETITION DENIED.**

BYBEE, Circuit Judge, dissenting.

The immigration judge ("IJ") found that Gursharan Kaur testified credibly and consistently at multiple evidentiary hearings. The IJ also found that Kaur's testimony was consistent with her detailed asylum application and other written declarations. But the IJ ultimately found that Kaur was not credible—and the majority agrees—because her testimony differs from what asylum officer Alisa Kaufman said Kaur told her in an interview three years prior to the asylum hearing. However, the problem is that Kaufman had no recollection of her interview with Kaur. What Kaufman had were her hand-written notes taken at the interview, and she testified before the IJ based on what she thought these three-year-old notes meant.

In *Singh (Jarnail) v. Gonzales,* 403 F.3d 1081 (9th Cir.2005), we noted that "[c]ertain features of an asylum interview make it a potentially unreliable point of comparison to a petitioner's testimony for purposes of a credibility determination." *Id.* at 1087. These features include the lack of formality in the interview and the lack of incentive on the part of the asylum officer to keep accurate records. *Id.* Although our case law does not require an IJ to categorically exclude an asylum officer notes and testimony, our precedent counsels us to "hesitate" in order to ensure that such interviews are "accurately understood and recorded" prior to accepting inconsistencies as a basis for an adverse credibility determination. *Li v. Ashcroft,* 378 F.3d 959, 962–63 (9th Cir.2004).

The notes here are highly problematic. First, they are cryptic, handwritten notations, filled with abbreviated words and dates. Kaufman's testimony is a kind of self-generated hearsay—she testifies as to what she thought she wrote three years earlier, without actually recalling her interview with Kaur. Furthermore, Kaufman's notes do not reflect any of the questions she asked Kaur. So when the IJ finds Kaur's responses to Kaufman inconsistent with her testimony at the hearing, the IJ has made the assumption that we can figure out what the question was. Finally, Kaufman's notes in this case are suspect because Kaufman testified that she had picked up a little Punjabi and that she sometimes took notes based on what she thought an applicant said in Punjabi rather than what the translator said in English. In other words, some portion—it is impossible to know how much for sure—of Kaufman's notes may be based on her own translation of Kaur's Punjabi responses, rather than on the translator's English responses.

The alleged inconsistencies between Kaur's testimony at the hearing and Kaufman's interpretation of her hand-written notes are too thin to sustain the IJ's conclusion. The majority finds three inconsistencies: (1) whether Kaur was raped during her second arrest, (2) when Kaur went into hiding in Uttar Pradesh, and (3) when Kaur's father was last arrested. Because I find that none of these alleged inconsistencies constitute substantial evidence regarding Kaur's credibility, I respectfully dissent.

### 1. *Kaur's Second Arrest*

The majority concludes that the IJ's finding is supported by substantial evidence because "[a]ccording to Kaufman's testimony and notes from Kaur's asylum interview, Kaur stated an inspector raped her during her second arrest," while Kaur testified before the IJ that she was beaten but not raped during the second arrest. With regard to Kaur's arrests, the notes are difficult to reconstruct. Kaufman's notes show that during the interview, Kaur provided the date of her second arrest, then stated the date of her first arrest, and then proceeded to describe how she was violently raped during her incarceration. However, it is impossible to tell from the notes what event Kaur was describing to Kaufman when she stated she was raped: it could have been the second arrest, the first arrest, or some combination of both. This distinction is critical, because Kaur repeatedly testified before the IJ that she was violently raped during her first arrest but not her second. Indeed, because Kaur provided the dates for both arrests immediately prior to her description, and because the notes do not indicate what questions Kaufman actually asked, it is impossible to tell whether any inconsistency exists, whether Kaur understood what Kaufman asked, and whether Kaufman understood and accurately recorded Kaur's response.

Of course, Kaufman's testimony before the IJ could have provided greater detail regarding Kaur's statements at the asylum interview, which could have made the IJ's reliance on this alleged inconsistency reasonable. However, Kaufman provided no independent detail or corroborating evidence to bolster the reliability of the information contained in the notes. To the contrary, Kaufman testified before the IJ that she had no "independent recollection of the interview," and Kaufman's testimony before the IJ contained the same ambiguities as the account in her notes. Kaufman testified that at the asylum interview Kaur stated she was raped during "the arrest," but Kaufman again failed to specify whether Kaur was referring to the first or the second arrest when describing the rape. The majority assumes that Kaufman's reference to "the arrest" means "the *second* arrest" when the only evidence regarding the issue is Kaur's detailed and consistent testimony to the contrary. Because of the unreliability of the notes, Kaufman's failure to establish any independent recollection at the hearing, the lack of any clear discrepancy, and Kaur's consistent and detailed testimony, substantial evidence does not exist to support the IJ's adverse credibility determination with regard to this issue.

### 2. *Date Kaur Went Into Hiding*

Kaur testified before the IJ that she went into hiding in January 1997, and Kaufman testified that during the asylum interview Kaur stated she went into hiding in January 1996. In written declarations and oral testimony before and after her interview with the asylum officer, Kaur consistently testified that she went into hiding from January 1997 to March 1997. "There is no indication anywhere in the record as to why the petitioner would lie about the date." *Bandari v. INS*, 227 F.3d 1160, 1166 (9th Cir.2000). Indeed,

**32**

the remainder of Kaur's detailed factual account is consistent with her claim that she went into hiding from January 1997 to March 1997. Moreover, this alleged inconsistency does not reflect on Kaur's truthfulness as much as her ability to recount specific dates spanning a ten year period. As we have previously noted, "[t]he ability to recall precise dates of events years after they happen is an extremely poor test of how truthful a witness's substantive account is." *Singh (Jarnail),* 403 F.3d at 1091. Given the questionable reliability of Kaufman's notes, Kaur's consistent testimony that she went into hiding in January 1997, and the minor alleged discrepancy in dates, this inconsistency is insufficient to support an adverse credibility finding.[1]

### 3. Date of Kaur's Father's Last Arrest

The majority next finds that the date Kaur provided to the IJ for her father's last arrest was inconsistent with the date provided to Kaufman. Kaur testified before the IJ that her father was arrested at a ceremony in December 1993, arrested at a rally in September 1995, arrested in December 1996, and questioned over-night after going to the police station in March 1997. Kaufman's testimony indicates that Kaur identified four arrest dates at the asylum interview: December 1993, September 1995, December 1996, and March 1997.[2]

It is not even clear that there is any inconsistency here. The only alleged discrepancy is that Kaur identified the March 1997 incident as an arrest at the asylum interview and described it merely as over-

night questioning in her testimony before the IJ. Describing the March incident as an arrest in one instance and overnight questioning in another is a mere semantic difference, not substantial evidence. If anything, Kaur's ability to consistently recount all three of her father's arrests and the date he went to the police for questioning serves to buttress her credibility, not undermine it.

In short, the inconsistencies relied on by the IJ do not constitute substantial evidence supporting an adverse credibility finding and the evidence in the record "compels a contrary conclusion." *Kaur v. Gonzales,* 418 F.3d 1061, 1064 (9th Cir. 2005). Accordingly, I respectfully dissent.

Q: Could have been '97 or '98?
A: Correct.

---

1. Ironically, Kaufman had difficulty remembering dates for the same time frame in answering questions about her own background:
   Q: And when was that AOBC training?
   A: I think it was in the Spring of 1998.
   Q: Not '97 or '99.
   A: You know I'm honestly not sure. No it wouldn't have been '99 so it could have been '97.

2. Although Kaufman does mention that Kaur identified a December 1997 arrest, Kaufman's notes clearly indicate that Kaur corrected herself and identified March 1997 as the correct date.