**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANTONIO XAVIER ALMEIDA, | No. 07-73210 |
| Petitioner, | Agency No. A98-829-169 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 11, 2011
San Francisco, California

Before: W. FLETCHER and N.R. SMITH, Circuit Judges, and MILLS, Senior District Judge.[**]

Antonio Xavier Almeida, a native and citizen of India, petitions for review

of the Board of Immigration Appeals' ("BIA") order dismissing his appeal from an

immigration judge's ("IJ") decision denying his application for asylum, his request

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Richard Mills, Senior United States District Judge for the Central District of Illinois, sitting by designation.

for withholding of removal, and his request for relief under the Convention Against Torture ("CAT"). The BIA denied relief, concluding that (1) there was no evidence that Almeida was persecuted on account of a statutorily protected ground and (2) in the alternative, Almeida could safely and reasonably relocate within India.

Almeida filed his application after May 11, 2005, so we apply the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302 (2005). We have jurisdiction under 8 U.S.C. § 1252, and we grant the petition for review.

I.

Where the BIA conducts *de novo* review and issues its own decision, we review the BIA's decision, except to the extent that the IJ's decision is expressly adopted by the BIA. *Ghaly v. INS*, 58 F.3d 1425, 1430 (9th Cir. 1995). "Where the BIA incorporates the IJ's decision, we review the IJ's decision." *Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir. 2002) (citation omitted).

We review the IJ and BIA's factual findings in connection with a denial of asylum, withholding of removal, or CAT relief for substantial evidence. *Li v. Ashcroft*, 378 F.3d 959, 962 (9th Cir. 2004). We explained in *Li* that a ruling denying asylum "can be reversed only if the evidence presented was such that a

2

reasonable fact finder would have to conclude that the requisite fear of persecution existed." *Id.*

When the IJ does not explicitly make an adverse credibility determination, a petitioner has the benefit of a rebuttable presumption of credibility on appeal. *See* 8 U.S.C. § 1158(b)(1)(iii).

## II.

In order to be eligible for asylum, an applicant must demonstrate that he or she has a well-founded fear of future persecution. A well-founded fear of future persecution is presumed if the applicant has suffered past persecution. *See* 8 C.F.R. § 1208.13(b)(1).

For applicants to establish past persecution, they must show that: "(1) their experiences rise to the level of persecution; (2) the persecution was on account of one or more of the protected grounds; and (3) the persecution was committed either by the government or by forces that the government was unwilling or unable to control." *Truong v. Holder*, 613 F.3d 938, 941 (9th Cir. 2010).

Under the Real ID Act, a protected ground must represent "one central reason" for the asylum applicant's persecution. *See* Real ID Act of 2005, 119 Stat. 302, 303; *Parussimova v. Mukasey*, 555 F.3d 734, 740 (9th Cir. 2009). We held in *Parussimova* that the applicant "need not prove that a protected ground was the

3

only central reason for the persecution," nor that "a protected ground was the most important reason why the persecution occurred." 555 F.3d at 740. We noted that the REAL ID Act does not require that the protected ground "account for 51% of the persecutor's motivation." *Id.*

On this record, we conclude that Almeida's religion was one of the central reasons for his arrests, and for the attacks by the police and members of Shiv Sena. A substantial portion of the abuse Almeida received was directly related to his Roman Catholic faith and his involvement in Church activities. Religion was a central reason for the abuse Almeida received in connection with his opposition to the metal recycling plant. The owner of the plant was Hindu, and the plant was located adjacent to a Catholic church and school. The Church organized hunger strikes to protest the plant. The plant owner used Hindu fundamentalists as enforcers against the opposition. The Shiv Senda enforcers warned Almeida and other participants to stop their religious activities. Religion was one of the core issues in this dispute, not merely a tangential element. The record compels the conclusion that religion was one central reason for the actions taken against Almeida.

However, because neither the IJ nor the BIA determined whether the cumulative harm suffered by Almeida rose to the level of persecution, we remand

4

to the BIA for a determination of that issue in the first instance. *See INS v. Ventura*, 537 U.S. 12, 16-18 (2002) (per curiam). Even though remanding for such a determination, we note that the record contains "credible evidence that [Almeida] was detained, beaten, and threatened on numerous occasions." *Baghdasaryan v. Holder*, 592 F.3d 1018, 1026 n.8 (9th Cir. 2010).

III.

Alternatively, assuming that Almeida established past persecution, the BIA nevertheless determined that Almeida did not demonstrate a well-founded fear of future persecution, because Almeida could relocate within India to avoid persecution. The BIA found that the government rebutted the presumption of a well-founded fear of persecution by showing that Almeida could safely relocate within India and that it would be reasonable for him to do so. The BIA erred in determining that the government met its burden of proving that Almeida could reasonably relocate within India. Where the persecutor is a government or is government-sponsored, it is presumed that internal relocation within the applicant's native country would not be reasonable, unless the government establishes by a preponderance of the evidence that it would be reasonable to relocate within his native country. *See* 8 C.F.R. § 1208.13(b)(3). "The reasonableness of internal relocation is determined by considering whether the

5

applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and family ties." *Knezevic v. Ashcroft*, 367 F.3d 1206, 1214 (9th Cir. 2004) (citing 8 C.F.R. § 1208.13(b)(3)).

Here, the record does not support the BIA's and IJ's conclusion that the government met its burden of proof. The IJ did not provide any individualized analysis in finding that relocation was reasonable. *See Knezevic v. Ashcroft*, 367 F.3d 1206, 1214 (9th Cir. 2004) ("The IJ's determination that it would be reasonable to require [petitioners] to relocate internally . . . was deficient[,] . . . [because] the IJ failed to take into account the numerous factors for determining reasonableness outlined in 8 C.F.R. § 1208.13(b)(3)."); *Melkonian v. Ashcroft*, 320 F.3d 1061, 1069 (9th Cir.2003) ("It is not enough . . . for the IJ to find that the applicants could escape persecution by relocating internally. It must be reasonable to expect them to do so."). Instead, the IJ merely referenced general country conditions throughout India and noted that Almeida spoke English and Hindi and had traveled throughout the world. These comments fail to analyze the reasonableness of relocating in India as set forth in 8 C.F.R. § 1208.13(b)(3).

**PETITION FOR REVIEW GRANTED; REMANDED.**