NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 7 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MUSHEGH PARUNAKYAN; et al., | No.13-70367 |
| Petitioners, | Agency Nos.A097-359-658 |
| v. | A097-359-659<br>A097-359-660 |
| DANA J. BOENTE, Acting Attorney General, | A097-359-661<br>A097-359-662 |
| Respondent. | MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 7, 2016
Pasadena, California

Before: PREGERSON, TASHIMA, and CALLAHAN, Circuit Judges.

Petitioner Mushegh Parunakyan, a native and citizen of Armenia, seeks

review of the Board of Immigration Appeals' ("Board") decision dismissing his

appeal of an immigration judge's ("IJ") order denying his applications for asylum,

withholding of removal, and protection under the Convention Against Torture

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

("CAT").

Parunakyan contends that the Board erred in finding that he did not qualify for an exception to the requirement that an asylum-seeker file his application within one year of entering the United States. 8 U.S.C. § 1158(a)(2)(B); 8 C.F.R. § 208.4(a)(5). The temporal requirement may be waived in "extraordinary circumstances," including, inter alia, where the applicant files within a reasonable period of time after the expiration of his lawful immigrant status. 8 C.F.R. § 208.4(a)(5)(iv). Parunakyan entered the United States in January 1999, but did not seek asylum until October 2003. This was nearly nine months after his H-1B visa had expired and approximately four months after his employer had withdrawn a visa renewal application. For the purpose of deciding this petition, we assume without deciding that Parunakyan's delay may fit within the "extraordinary circumstances" exception and resolve the case on the merits.

The Board denied Parunakyan relief based on an adverse credibility determination. We apply the pre-REAL ID Act standard for credibility determinations because Parunakyan filed his application before the REAL-ID Act took effect on May 11, 2005. *Kaur v. Gonzales*, 418 F.3d 1061, 1064 n.1 (9th Cir. 2005). We uphold the Board's credibility determination if it is based on inconsistencies that "go to the heart of the asylum claim." *Li v. Ashcroft*, 378 F.3d 959, 962 (9th Cir. 2004) (internal quotation marks omitted).

2

Several inconsistencies go to the heart of Parunakyan's claim. For example, despite testifying that he led the Armenian opposition candidate's youth outreach efforts and otherwise campaigned for him, Parunakyan could not recount any specific policies or goals of the youth campaign or the candidate's political platform. Moreover, Parunakyan's account of the circumstances surrounding his March 16, 1998 election day beating shifted over time. In his narrative statement, Parunakayan stated that he was at the opposition's "central headquarters" in Yerevan on the day of the election, but before the IJ he testified that he was at a polling station in Abovian in the Kotyk district. Parunakyan's explanation that every district has a headquarters was deemed incredible because Parunakyan had previously stated that *the* central headquarters was located in Yerevan. Moreover, Parunakyan's explanation does not resolve the conflict of whether he was at a polling station or the campaign's headquarters (be it a district or central headquarters). Parunakyan also testified that he was issued a medical certificate upon being discharged from the hospital in March 1998 after he was beaten by pro-government forces, but the proffered medical certificate postdates the incident by more than five years.

In sum, Parunakyan's recounting of the facts surrounding his alleged participation in opposition politics and resulting mistreatment—facts that go to the heart of his asylum claim—were either vague or inconsistent. *See Li*, 378 F.3d at

3

962. The Board therefore reasonably denied his asylum application.

Because we hold that Parunakyan does not satisfy the standard of proof for asylum, he cannot meet the more demanding standard for withholding of removal, and so that claim similarly fails. *See Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004).

Finally, Parunakyan's CAT claim is based on the same testimony the Board deemed incredible, and the adverse credibility determination undermines any contention that he is likely to be detained and tortured upon returning to Armenia. The Board therefore reasonably affirmed the IJ's denial of Parunakyan's petition for CAT relief.

**PETITION FOR REVIEW DENIED.**

*Parunakyan v. Lynch*, No. 13-70367
PREGERSON, Circuit Judge, dissenting:

FEB 7 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

I dissent. I believe that each of the purported inconsistencies cited by the IJ can be explained away or are so trivial that they should not be the basis for denying Parunakyan's application.

In 1999, Mushegh Parunakyan fled political persecution in his native Armenia in search of a better life in the United States. After he obtained employment and a work visa, Parunakyan's wife, Aida, and three young children, Levon, Shoghik, and Karolina, joined him in the U.S. In 2003, Parunakyan was not able to renew his work visa, and he promptly filed for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). He was denied all relief and the government has, as of yet, declined to exercise prosecutorial discretion.

Parunakyan and his family have built a new life in the U.S. Now, for the second time in 17 years, the family will be uprooted and forced to start over. Parunakyan's now-adult children, who are products of our education system and members of our community, will be sent to a country that is foreign to them. We should not deny them the opportunity to use their talents in the country they call home.

I decline to be a party to this unkind result.

1