**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KALAVATIBEN AHIR,

*Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney General,

*Respondent.*

No. 04-73464

Agency No.
A70-623-855

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 4, 2008—Pasadena, California

Filed June 2, 2008

Before: J. Clifford Wallace, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Wallace

## COUNSEL

Garish Sarin, Los Angeles, California, for the petitioner.

Peter Keisler, Assistant Attorney General, Norah Ascoli Schwartz, Senior Litigation Counsel, John C. Cunningham,

Senior Litigation Counsel, Office of Immigration Litigation, Washington, D.C., for the respondent.

## OPINION

WALLACE, Circuit Judge:

Kalavatiben Ahir petitions for review of a decision of the Board of Immigration Appeals (Board) affirming the Immigration Judge's (IJ) finding that her application for asylum was frivolous. We have jurisdiction to review orders of removal pursuant to 8 U.S.C. § 1252, and we deny the petition.

I.

Ahir, a native and citizen of India, entered the United States through Miami, Florida in March 1992 as a non-immigrant visitor. After overstaying her visa, Ahir filed an application for asylum in May 1994. In her application, Ahir alleged that in India she belonged to a "Hindu Sanatan group." She explained that the Sanatan group had been banned by the government, and that "we have been arrested several times for protesting against those atrocities." She also stated: "I have been arrested for no reason many times because I don't believe in the policies of the government." The application form used by Ahir in 1994 did not contain any explicit warning of the consequences for filing a frivolous application.

In March 1999, the Immigration and Naturalization Service (INS) terminated Ahir's application for asylum after she failed to appear at a scheduled hearing in Miami. The INS then filed a Notice to Appear, charging her with removability under section 237(a)(1)(B) of the Immigration and Nationality Act (INA). When Ahir failed to appear, the IJ proceeded *in absentia* and ordered her removed to India.

In December 2000, Ahir filed an unopposed motion to reopen her removal proceedings on the ground that she had not received notice of the 1999 hearing. The IJ granted the motion, as well as a subsequent motion for change of venue to Los Angeles, California.

On May 24, 2001, Ahir appeared at a removal hearing before an IJ in Los Angeles. At the hearing, her attorney conceded that Ahir was subject to removal, but stated that she had filed an application for asylum in 1994. He told the IJ that Ahir wished to renew her claim for asylum and withholding. He then submitted a new application, which he described as "an amendment" to the 1994 application. In response, the IJ warned Ahir's attorney that the 1994 asylum application could be used for impeachment purposes and that the attorney "should not assume that the update material you give to me is going to be without challenge by the Government."

Ahir's second asylum application contained additional details about her alleged persecution in India. Ahir explained that she had been a member of the "Samtha Group," which taught poor women "how to read and write and not to kill their female children . . . ." She alleged that her involvement with this group "brought the anger of men especially from the Muslim community." She also specified:

> I was arrested three times, the first in December, 1979, then June, 1980, and then in July, 1982. At all times, I was not presented in a court of law and told to stop my activities. At times, I was slapped and my hair was pulled by the police, as well, as hit by a stick. All three arrests were for some time ranging from 4 to 8 days.

Unlike her 1994 application, the application form submitted by Ahir in 2001 contained an explicit warning of the consequences for filing a frivolous application. Immediately above

Ahir's signature was a conspicuous warning, in bold letters, that:

**Applicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act.**

On the same page, Ahir's attorney also signed a declaration that "the completed application was read to the applicant in his or her native language for verification before he or she signed the application in my presence."

After receiving Ahir's second asylum application, the IJ scheduled a hearing for February 13, 2003. One week before the hearing, however, Ahir's attorney requested a "continuance of her asylum merits hearing" on the ground that she was now eligible for adjustment based on an approved labor certification. The IJ granted a continuance, and her asylum hearing was rescheduled for January 23, 2004.

When the date of Ahir's asylum hearing arrived, her attorney presented the IJ with an application for adjustment of status, based on an approved labor certificate. At the start of the hearing, the IJ took notice of Ahir's adjustment application, but stated that her "asylum and persecution claim . . . is the ultimate claim the respondent is asserting . . . ." Ahir's attorney called only one witness, the owner of a jewelry store, who indicated that he was willing to hire Ahir.

The government then called Ahir to testify. The IJ started by reminding her that she remained under oath, and Ahir indicated that she understood. During its questioning, the government asked: "Have you ever been arrested or convicted of a crime anywhere in the world?" When Ahir responded in the negative, the government pointed out that her asylum application indicated otherwise, and asked her if the information in her application was false. She did not respond directly, but

continued to insist that she had never been arrested. After several attempts to re-frame the question, the following exchange took place between the government and Ahir:

> Q: Did you belong to any organizations in your country?
>
> A: It was with an Indian Swami, yes.
>
> Q: Did you belong to the Samatha Group?
>
> A: Yes, yes, the Samatha Group.
>
> Q: Were you ever arrested for being a member of the Samtha Group?
>
> A: No, never.

At this point, Ahir's attorney asked if he could go off the record to speak with his client privately. The IJ refused, stating "I want a few more questions answered to me first." The IJ then asked Ahir whether she ever belonged to the "Hindi Samaton Group." She responded that she had. He then asked her if she had "ever had problems because of that membership," to which she responded: "No, none." Ahir's attorney then renewed his request to speak with his client privately off the record. The IJ denied his request, but offered him an opportunity to ask questions on redirect examination. In response to questions by her attorney, Ahir asserted that she filed an application for asylum because "the Muslims were harassing me." After repeated questioning by both the government and her own attorney, however, Ahir continued to insist that she had never been arrested anywhere in the world.

When the government and Ahir's attorney were finished, the IJ began his own questioning about Ahir's asylum applications. The IJ first engaged in a lengthy description of the precise discrepancies that concerned him. He read to Ahir

exactly what she wrote on her 1994 and 2001 applications, and then asked her to explain why those applications did not match her current testimony. Ahir was unable to explain, and responded, "[a]t this moment, I'm not able to understand anything." The IJ then asked her directly: "Did you present to me a false claim for asylum, a made-up claim? You've never been persecuted or mistreated in India?" Ahir did not respond directly, and continued to insist that she had never been arrested.

At the conclusion of Ahir's testimony, the IJ issued an oral decision. He pointed out that when asked to explain the discrepancies between her asylum applications and her testimony, Ahir "either failed to explain . . . , failed to even respond, or further contradicted her application." He then concluded that Ahir had filed a "fraudulent, frivolous claim for asylum" and demonstrated a "total disregard for the Immigration laws of this country, and the generous nature of this country and its people in regard to real individuals who seek asylum and protection from harm." By operation of INA § 208(d)(6), this finding of frivolousness required the IJ to deny Ahir's applications for adjustment of status and voluntary departure. In addition, he held that denial of those forms of relief was warranted as a matter of discretion.

Ahir appealed the IJ's decision to the Board. In her notice of appeal, she alleged she had been "confused and disoriented" when the IJ questioned her about her asylum applications, because she was only prepared to go forward with an adjustment application based on an approved labor certification. She also alleged that the IJ's finding of frivolousness was based "on speculation and conjecture, without any evidence . . . ." Nowhere in her notice of appeal or subsequent appellate brief, however, did she allege any defect in the notice she received of the consequences of filing a frivolous asylum application.

The Board denied Ahir's appeal in a one-paragraph decision. The Board agreed that Ahir had filed a frivolous applica-

tion and was therefore ineligible for any benefits under the INA.

## II.

"We review the [Board's] determination of purely legal questions regarding the Immigration and Nationality Act de novo." *Kankamalage v. INS*, 335 F.3d 858, 861 (9th Cir. 2003). "To the extent the [Board] incorporates the IJ's decision as its own, we review both the decisions of the [Board] and IJ." *Plasencia-Ayala v. Mukasey*, 516 F.3d 738, 743 (9th Cir. 2008).

**[1]** Under INA section 208(d)(6), an alien found to have "knowingly made a frivolous application for asylum" despite receiving notice of the consequences, becomes "permanently ineligible for any benefits" under the statute. 8 U.S.C. § 1158(d)(6). Given the severity of these consequences, the implementing federal regulations provide that an applicant is only subject to the penalties of INA section 208(d)(6) if certain procedural safeguards are met. *See* 8 C.F.R. § 208.20. In particular, the Board or IJ must make a specific finding that an alien deliberately fabricated a material element of the application. The IJ or Board must also give the alien "sufficient opportunity to account for any discrepancies or implausible aspects of the claim." *Id.*

**[2]** Subsequent to the Board decision in this case, the Board published *In re Y—L—* to provide additional guidance as to the "standards for deciding when an asylum application may be found to be frivolous." 24 I. & N. Dec. 151, 151-152 (BIA 2007). The Board outlined four procedural requirements necessary for a finding of frivolousness. First, an asylum applicant must have notice of the consequences of filing a frivolous application. *Id.* at 155. Second, the IJ or Board must make specific findings that the applicant knowingly filed a frivolous application. *Id.* Third, those findings must be supported by a preponderance of the evidence. *Id* at 157. Finally,

the applicant must be given sufficient opportunity to account for any discrepancies or implausibilities in his application. *Id.* at 159-160.

We have not specifically addressed the procedural framework outlined in *In re Y—L—*. Prior to *In re Y—L—*, we had addressed the issue of frivolous asylum applications on only one occasion. In *Farah v. Ashcroft*, we held that an alien must be given "adequate opportunity" to address the discrepancies in the record that form the basis of a frivolousness finding, but we offered little additional guidance. 348 F.3d 1153, 1158 (9th Cir. 2003). Moreover, in the one published opinion to address this issue after *In re Y—L—*, we did not apply the Board's reasoning directly, but instead remanded so that the Board could "apply the standards set forth in *In re Y—L—* . . . in the first instance." *Kalilu v. Mukasey*, 516 F.3d 777, 779 (9th Cir. 2008) (footnote omitted).

**[3]** We adopt the analytical framework of *In re Y—L—* but remand is not necessary here if the IJ and Board applied the same test despite deciding this case prior to *In re Y—L—*. We now address each of the four *In re Y—L—* requirements.

**[4]** The first requirement is that an applicant be given adequate notice of the consequences of filing a frivolous application. Ahir never raised this issue in her appeal to the Board. She focused only on the perceived unfairness of the IJ's questions, and the alleged lack of foundation for the IJ's finding. Because Ahir never argued to the Board that the notice she received was in any way deficient, we lack jurisdiction to consider the argument here. *See Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004) (holding that 8 U.S.C. § 1252(d)(1) "generally bars us, for lack of subject-matter jurisdiction, from reaching the merits of a legal claim not presented in administrative proceedings below"). Although Ahir now frames her argument in terms of Constitutional due process, the issue still falls outside our jurisdiction because any alleged

defect in notice would have been "procedural in nature" and could have been remedied by the Board. *Id.*

The government argues that Ahir *did* receive notice of the consequences of filing a frivolous application. Immediately above the signature line on the Form I-589 application she filed in 2001 was a conspicuous warning, in bold text, that "[a]pplicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act." Her attorney also signed a declaration, on that same page, which indicated that "the completed application was read to the applicant in his or her native language for verification before he or she signed . . . ." In *In re Y—L—*, the Board pointed to the same Form I-589 warning language as evidence that an applicant received notice. 24 I. & N. Dec. at 155. Nevertheless, because Ahir did not challenge the adequacy of her notice before the Board, we do not decide whether this notice was adequate.

**[5]** As for the second procedural requirement under *In re Y—L—*, the IJ made explicit findings that Ahir knowingly filed a frivolous application. In his oral decision, the IJ first listed the inconsistencies between Ahir's asylum applications and her adjustment application. He then pointed out that when asked to respond to the discrepancies, Ahir "either failed to explain . . . , failed to even respond, or further contradicted her application." The IJ therefore found that Ahir's claims of persecution had been fabricated "whole cloth." Finally, he held, "[n]ot only did she begin with a fraudulent claim for asylum, she renewed and updated in more detail, this fraudulent claim, only showing her total disregard for the Immigration laws of this country . . . ."

We next turn to the third requirement from *In re Y—L—*: the IJ's findings must be supported by a preponderance of the evidence. Prior to the Board's publication of *In re Y—L—*, our sister circuits generally required a finding of frivolousness to

be supported by something more than a mere adverse credibility finding. *See, e.g., Scheerer v. U.S. Attorney Gen.*, 445 F.3d 1311, 1318 (11th Cir. 2006) ("an adverse credibility determination alone cannot support a finding of frivolousness"); *Muhanna v. Gonzales*, 399 F.3d 582, 589 (3d Cir. 2005) (same); *see also Mingkid v. U.S. Attorney Gen.*, 468 F.3d 763, 769-70 (11th Cir. 2006) (reversing when IJ found frivolousness based only on minor inconsistencies). The courts generally only affirmed a finding of frivolousness if it was either supported by some form of extrinsic evidence contradicting the applicant's claims, *see, e.g., Ignatova v. Gonzales*, 430 F.3d 1209, 1214 (8th Cir. 2005) (applicant shown to have submitted fraudulent hospital records); *Selami v. Gonzales*, 423 F.3d 621, 624 (6th Cir. 2005) (applicant shown to have fabricated a newspaper article), or if the applicant made an explicit admission of untruthfulness, *see Kifleyesus v. Gonzales*, 462 F.3d 937, 945 (8th Cir. 2006) (applicant admitted that asylum application was false); *Barreto-Claro v. U.S. Attorney Gen.*, 275 F.3d 1334, 1339 (11th Cir. 2001) (same).

Against this backdrop, the Board clarified in *In re Y—L—* that the statute and regulations do not require any sort of "concrete or conclusive" evidence to support a frivolousness finding. 24 I. & N. Dec. at 158. Instead, the IJ is free to rely on both direct and circumstantial evidence, so long as a preponderance of the evidence supports a finding of frivolousness. *Id.*

**[6]** In the present case, there was no direct extrinsic evidence that Ahir fabricated her asylum applications. Nevertheless, a preponderance of the evidence in the record supports the IJ's determination. In Ahir's 2001 asylum application, she stated she had been arrested on three specific dates as a result of her membership in the Samtha Group. She embellished her account of these arrests with the claim that she had been slapped, hit by a stick, and had her hair pulled by the police, and that she had been in custody for a number of days.

**[7]** These claims are directly inconsistent with her subsequent assertion, in her application for adjustment, that she has never been arrested "in or outside the U.S." They are also directly inconsistent with her repeated statements during the hearing that she had never been arrested anywhere in the world. Although Ahir did not admit that she lied in her asylum applications, she made the functional equivalent of such an admission when she repeatedly failed to account for the discrepancies and continued to insist that she had never been arrested. Therefore, we hold that the inconsistency between her asylum applications, her written adjustment application, and her hearing testimony, combined with her inability to resolve these inconsistencies when requested to do so by the IJ, provides a preponderance of evidence to support the IJ's determination of frivolousness.

**[8]** The IJ also satisfied the fourth *In re Y—L—* procedural element, which requires each applicant to be given "ample opportunity during his hearing to address and account for any deliberate, material fabrications upon which the IJ may base a finding of frivolousness." *Id.* at 159 (internal quotation marks and citation omitted). To that end, the Board indicated that it would be "good practice for an Immigration Judge who believes that an applicant may have submitted a frivolous asylum application to bring this concern to the attention of the applicant prior to the conclusion of proceedings." *Id.* at 159-60. The IJ in this case did just that. He first provided Ahir with a lengthy and detailed explanation of the discrepancies at issue and asked her to explain. When she proved unable to do so, he asked her directly, "[d]id you present to me a false claim for asylum, a made-up claim?" This was sufficient to satisfy the fourth procedural element of *In re Y—L—*.

## III.

We recognize that the consequences of a finding of frivolousness under INA section 208(d)(6) are severe. However, the decision to file a fraudulent application for asylum is not

one that should be taken lightly. When an applicant abuses the asylum process, as Ahir has done here, we conclude that a finding of frivolousness is appropriate. So long as the IJ and Board have followed the procedural framework outlined in *In re Y—L—*, an alien may properly be deemed "permanently ineligible" for the benefits of this country's immigration laws.

**PETITION DENIED.**