Opinion by Judge THOMAS; Partial Concurrence and Partial Dissent by Judge HALL.
OPINION
THOMAS, Circuit Judge:
This petition for review presents us with the question of whether an adverse credibility finding by an immigration judge (“IJ”) based solely on the IJ’s belief that the petitioner created a document for the purpose of supporting an asylum application can sustain a sua sponte finding that *999 the petitioner had filed a frivolous petition. Under the circumstances presented by this case, when the possibility of such a finding was not raised by the government or by the IJ, we conclude that the frivolous finding must be set aside. We conclude, however, that the IJ’s adverse credibility finding was supported by substantial evidence. We therefore deny the petition in part and grant it in part.
I
Khagendra Khadka entered the United States on November 6, 2002, on a B-l visitor visa. He applied for asylum in early December. He claimed that his service in the Nepali police force, and his family’s affiliation with and support for the Nepali Student Union and Nepali Congress, exposed him as a target for Maoists. He stated that Maoists had threatened his life, demanded money from his family, and were actively searching for him.[1] Along with his application, Khadka submitted a large amount of documentation of his service in the Nepali police force and UN mission in Iraq, as well as affidavits from family members and a neighbor about threats that he had received. He submitted an article from the Tarun, a weekly Nepali newspaper affiliated with the D Faction of the Nepali Congress Party, that reported his activities fighting Maoists and Maoist threats to his life. The asylum officer who interviewed Khadka referred the case to immigration court, and a notice to appear charging him with removability for overstaying his visa was issued one week later.
Khadka renewed his application for asylum. During the hearings held before the IJ, the government argued that the newspaper article was fabricated. The government’s primary witness was Stephen Brault, Chief of the Consular Section at the U.S. embassy in Nepal, who testified telephonically about the investigation that he and his associates conducted into the authenticity of the article. Although the editor of the Tarun faxed Brault a copy of the article that corresponded to the one submitted by Khadka, people at the embassy were concerned by what they saw as inaccuracies in the article. The embassy asked Taranath Dahal, the President of the Federation of Nepal Journalists, to look for the article in the National Press Council archives. Although Dahal found a copy of the September 30, 2002 edition of the Tarun, it did not include the article submitted by Khadka. Printed in its place was an article about a woman in a village 18 hours from the Kathmandu Valley. Brault sent a second investigator, who confirmed what the first contact had found. Surprised by what he was being told, Brault himself went to the archives, where he found two copies of the September 30, 2002 Tarun, but only a single issue from every other date upon which the Tarun had been printed that year. One of the copies contained the article on the village woman, and one contained the article about Khadka. There were no other substantive differences between the two versions. The masthead on the paper with the article about Khadka lacked the D Faction’s torch logo (present on the other papers), was the only issue to include a phrase meaning outside the valley, and was printed in monotone rather than two shades. Dahal submitted an affidavit that the Tarun published only one version of one issue per week, and Brault agreed, explaining that the embassy’s political section had studied every newspaper published in Nepal every day for eleven years. Brault also testified that Khadka’s broth *1000 er-in-law, Bal Bdr. K.C., is a leading member of the D Faction and was a minister in the Nepalese government in September 2002. Brault opined that the outside the valley version was likely printed by the publisher of the Tarun, “possibly because of political influence,” but never circulated.
On notice before the hearing that the government questioned the authenticity of the article, Khadka called a rebuttal witness, John Adams, a professor at the University of Virginia and regional expert who conducted an investigation of his own. The Tarun’s editor told Adams that, up until a year before, the paper had occasionally published a second, outside the valley edition of the paper, in order to control management of its circulation. The editor wanted to get a better sense of the paper’s market, which required a way to differentiate between papers sold in and away from Kathmandu, and he was concerned that sales numbers were being fabricated. Adams had not actually seen any other outside the valley copies of the paper, however; nor did he learn on what dates such editions had been printed.
After several merits hearings, the IJ ultimately found that the article had been published by the newspaper for the sole purpose of assisting Khadka’s asylum claim and was not part of the paper circulated publicly. Finding Khadka not credible, the IJ refused to consider any other documents that he submitted.[2] The IJ denied his asylum claim. The IJ also found that Khadka knowingly filed a frivolous asylum application and barred him “forever from receiving any benefits under the Immigration and Nationality Act.” The IJ denied Khadka’s application for withholding of removal under the INA and the Convention Against Torture, and denied voluntary departure.
On appeal, Khadka challenged the IJ’s adverse credibility finding, his denial of asylum, and his finding of frivolousness. The Board of Immigration Appeals (BIA or Board) summarily affirmed. In Khadka’s petition for review, he challenges only the IJ’s adverse credibility finding and finding of frivolousness.
II
Because the BIA affirmed the IJ’s decision without opinion, we review the IJ’s decision as the final agency determination. Kaur v. Gonzales, 418 F.3d 1061, 1064 (9th Cir.2005). We review an IJ’s credibility determination for substantial evidence. Id. We accord special deference to an IJ’s credibility determination, and will only exercise our power to grant a petition for review when the evidence “ ‘compels] a contrary conclusion.’ ” Id. (quoting Malhi v. INS, 336 F.3d 989, 993 (9th Cir.2003)) (alteration in Kaur). As long as one of the identified grounds underlying a negative credibility finding is supported by substantial evidence and goes to the heart of the claims of persecution, we are bound to accept the negative credibility finding. See Li v. Ashcroft, 378 F.3d 959, 964 (9th Cir.2004) (affirming negative credibility finding even though some of the purported inconsistencies were factually unsupported or irrelevant); Wang v. INS, 352 F.3d 1250, 1259 (9th Cir.2003) (“[W]hether we have rejected some of the IJ’s grounds for an adverse credibility finding is irrelevant.”).
Substantial evidence supports the IJ’s adverse credibility determination. Brault testified about an elaborate scheme, *1001 involving the publisher of a newspaper associated with Khadka’s brother-in-law’s political party, to print a non-circulating issue and plant a copy at the National Press Archives.[3] The only explanation that Adams provided the IJ on rebuttal was, in turn, given to him by the implicated publisher and never verified.[4] The alleged fabrication was a specific, cogent reason for the IJ to find Khadka incredible. The article was about Khadka’s role fighting Maoist insurgents, their subsequent threats, and the impact of the threats on him and his family. Although the article was by no means the only evidence of his asylum claim, and while it corroborated the other evidence rather than revealing “inconsistencies,” it undeniably went to the claim’s heart. See Li, 378 F.3d at 964. Even if the article was not technically fraudulent, as both parties agree it was actually printed by the publisher of the Tarwn, it was presented to the immigration court under false pretenses. These false pretenses cast a sufficient pall on the asylum claim that, given our deferential standard of review, the other evidence that Khadka submitted to the court does not compel us to grant the petition.
Although it would have been preferable for the IJ to make a specific finding that Khadka knew about the circumstances of the article’s publication, his failure to do so is not enough to support granting his petition. Brault’s testimony, combined with Khadka’s failure to disclaim the article or provide any explanation for how it came to his possession without him knowing that it was never circulated, supports the conclusion that Khadka was aware of the circumstances of the publication. On appeal, while challenging the finding that he misrepresented the article’s history, Khadka still does not claim that he was misled to believe that the article was ever circulated. This is sufficient under our case law. See Yeimane-Berhe v. Ashcroft, 393 F.3d 907, 911 (9th Cir.2004) (holding that an adverse credibility finding based only on the submission of a counterfeit medical document was not supported by the record where there was “no evidence indicating that she knew the document was fraudulent’ ”); see also Corovic v. Mukasey, 519 F.3d 90, 97-98 (2nd Cir.2008) (where applicant disputes knowledge of fraud, IJ must “evaluate” whether applicant “had reason to know that the documents submitted were fraudulent”).
Ill
Pursuant to 8 U.S.C. § 1158(d)(6), “an alien [that] has knowingly made a frivolous application for asylum ... shall be permanently ineligible for any benefits under [the INA].” As explained in Department of Homeland Security regulations, section 1158(d)(6) requires the Board or IJ to *1002 make a specific finding that an alien “deliberately fabricated” a “material elemente ]” of the application. 8 C.F.R. § 208.20; see also In re Y-L, 24 I. & N. Dec. 151, 162 n. 1 (BIA 2007) (“In light of the regulatory requirement that there be evidence of a deliberate fabrication of a material element of a claim, the term ‘fraudulent’ may be more appropriate than the term ‘frivolous’ when applied to a questionable asylum application.”). The IJ or Board must also give the alien “sufficient opportunity to account for any discrepancies or implausible aspects of the claim.” 8 C.F.R. § 208.20.
We review a determination that an applicant knowingly made a frivolous application for asylum for compliance with a procedural framework outlined by the BIA. See Ahir v. Mukasey, 527 F.3d 912, 917 (9th Cir.2008) (adopting framework from Y-L, supra, 24 I. & N. Dec. 151).
First, an asylum applicant must have notice of the consequences of filing a frivolous application. Second, the IJ or Board must make specific findings that the applicant knowingly filed a frivolous application. Third, those findings must be supported by a preponderance of the evidence. Finally, the applicant must be given sufficient opportunity to account for any discrepancies or implausibilities in his application.
Id. (internal citations omitted). Whether a fabrication was of material elements is a mixed question of fact and law. Y-L, 24 I. & N. Dec. at 159. Whether the IJ properly applied the regulatory framework is a question of law. Id.
As is clear from these requirements, “ ‘a finding of frivolousness does not flow automatically from an adverse credibility determination.’ ” Liu v. U.S. Dep’t of Justice, 455 F.3d 106, 113 (2d Cir.2006) (quoting Muhanna v. Gonzales, 399 F.3d 582, 589 (3d Cir.2005)). For an IJ to make a frivolousness finding, he or she must be convinced that the applicant deliberately fabricated a material element, while an adverse credibility determination merely requires an omission, inconsistency, or discrepancy relating to a material element (the heart of the asylum claim). Compare 8 C.F.R. § 208.20, with Li, 378 F.3d at 962. Additionally, the government must prove that it is more likely than not that the applicant filed a frivolous asylum application, whereas a negative credibility determination need only be supported by substantial evidence, which might consist of as little as one specific and cogent reason. Compare Ahir, 527 F.3d at 917, with Li, 378 F.3d at 962, 964; see also Baria v. Reno, 94 F.3d 1335, 1340 (9th Cir.1996) (“ ‘Substantial evidence’ means more than a mere scintilla but less than a preponderance .... ”).[5] Our sister circuits and the BIA have explained that these two differences are due in part to the “severe conse quences” that flow from a frivolousness finding. See Muhanna, 399 F.3d at 589 (discussing “material element” requirement); Yang, 496 F.3d at 274 (same); YL, 24 I. & N. Dec. at 157 (discussing evidentiary standard).
In this case, the IJ made a specific finding that Khadka knowingly filed a frivolous application.
*1003 The evidence demonstrates that the respondent’s statement regarding his alleged special service in the police and army, [where he] encountered terrorists activities against the Maoist insurgents is false, and his statements regarding specific encounters with the Maoists is also false. He knew that these statements were false. His own employment history shows no such special service or encounters with the Maoists. He claimed that he was threatened by the Maoists and he reported the threats to his superiors at the police department, but they have no record of any such threats [or] any knowledge of any threats or any knowledge that the respondent had any problems with the Maoists whatsoever.
The misrepresented newspaper article was icing on the cake: Khadka “knew” his asylum claim was fabricated, “and yet he submitted his claim along with a newspaper article from his party’s partisan press, ... which is a special edition that was printed specifically to support [the] asylum claim.”
Because Khadka’s asylum application rests on interactions with Maoists (both as a Striking Commander and thereafter and therefore as an extorted and threatened asylum seeker), if supported by the record, this would constitute a fabrication of a material element of his claim. But the finding is not supported. The government submitted a copy of Khadka’s employment records that clearly indicates that he was a Deputy Superintendent of the Nepal Police who was assigned at one point to an anti-terrorist unit, deployed as a striking unit commander in both Chitawan and Pythan provinces, and twice placed in a standby group for a U.N. Peace Keeping Mission.[6] Khadka specifically testified that he had not reported any of the threats to his superiors, so it is no wonder that they were unaware of any.[7]
*1004 Fabrication of material evidence does not necessarily constitute fabrication of a material element. Compare Black’s Law Dictionary 638 (9th ed.2009) (defining “material evidence” as “[ejvidence having some logical connection with the facts of consequence or the issues”), with id. at 597 (9th ed.2009) (defining “element” as “[a] constituent part of a claim that must be proved for the claim to succeed”). The Tamm article was not the only evidence Khadka submitted to support his claim that he was threatened by Maoists for his activities as a Nepalese police officer. The record in this case is replete with Nepalese and United Nations employment records, affidavits of friends and family about Maoist threats, and general newspaper articles about Maoists that support the plausibility of Khadka’s claim. While these documents do not impact our analysis of the IJ’s adverse credibility determination, they undermine the IJ’s frivolousness finding, which must be based on evidence indicating that a material element of the claim was actually false.
The IJ also erred by not informing Khadka that he was considering making a frivolousness finding or otherwise giving Khadka sufficient opportunity to account for any of the alleged discrepancies and implausibilities in the record other than those few that supported the government’s suspicions that the newspaper article was fabricated. See Ahir, 527 F.3d at 917. Had he done so, Khadka would have had the opportunity to demonstrate why the petition was not frivolous.
The BIA has clearly contemplated that someone — either the IJ or the government — would raise the issue of fabrication. See Y-L, 24 I. & N. Dec. at 159-60 (“[I]t would be a good practice for an Immigration Judge ... to bring this concern to the attention of the applicant prior to the conclusion of proceedings^ though i]n some cases, the Government may raise the issue of frivolousness____”). Although it was clear in this case that the IJ was suspicious of the authenticity of the newspaper article, it was not until he read his ruling that Khadka was informed that the IJ did not believe that Khadka had ever confronted or been threatened by Maoists. The IJ did not even hint that he was going to reject all of Khadka’s documentary evidence. Even if the IJ does not have to inform the applicant that he is considering a frivolousness finding in so many words, where it is not otherwise obvious from the record, he needs to indicate that he questions material aspects of the claim. Cf. Ye v. Dep’t of Homeland Security, 446 F.3d 289, 295-96 (2d Cir.2006) (finding that for purposes of an adverse credibility determination the respondent need not be afforded an opportunity to respond to self-evident inconsistencies).
The IJ’s mistakes in this case highlight the importance of such a warning. With so many of the “facts” underlying the IJ’s adverse credibility and frivolousness findings unsupported by the record, it almost certainly would have made a difference to permit Khadka and his attorney to respond to the IJ’s concerns. At the very least, Khadka could have attempted to authenticate the supporting documents he presented to the court — many of which came from impartial sources — through some method other than his own testimony.
Given proper warning, an asylum applicant may be able to rebut an allegation that he filed a frivolous asylum application without actually convincing a finder of fact that he had not presented fabricated evidence. Because Khadka only was warned that the IJ questioned the authenticity of a *1005 single document, “[w]e do not find that ... the respondent should necessarily have anticipated [the IJ’s] finding and provided explanations.” Y-L, 24 I. & N. Dec. at 160; see also Yang v. Gonzales, 496 F.3d 268, 278 (2nd Cir.2007) (remanding to BIA in part because “the IJ did not inform the petitioner that she was considering a frivolousness finding during the course of the proceedings”).
IV
The IJ’s adverse credibility determination was supported by substantial evidence. However, because the IJ’s finding that Khadka filed a frivolous asylum application is not supported by a preponderance of the evidence, and because the IJ’s application of the frivolous asylum application bar was procedurally unsound, we grant Khadka’s petition in part and reverse the IJ’s application of the bar. We remand for further proceedings consistent with this opinion.
GRANTED IN PART; DENIED IN PART; REMANDED.

. The government has not challenged whether Khadka would be legally entitled to asylum if the IJ had found his allegations to be true, and we need not reach that question here.

. The IJ's adverse credibility determination was based on approximately seven additional findings, none of which was supported by the evidence, and which, by and large, the government does not defend.

. Khadka argues that the assumption that Khadka's brother-in-law orchestrated the printing of the paper was “speculation and conjecture.” We read the IJ’s consideration of the brother-in-law’s political stature instead as supporting the plausibility of the government's explanation of what happened, rather than a loosely-supported opinion as to how it occurred.

. Khadka argues that he was “denied a reasonable opportunity to” respond directly to the IJ’s concerns. See Singh v. Gonzales, 403 F.3d 1081, 1085 (9th Cir.2005). We disagree. Khadka was put on notice as to what Brault’s testimony would consist of by a previously-submitted affidavit. Khadka did not request a continuance or otherwise indicate that he needed additional time to respond to the government’s evolving argument about the article. One day of the merits hearing was held for the sole purpose of discussing the article, and Khadka was given the opportunity to cross examine the government’s expert witness and call his own. The IJ was not required to inform Khadka, at the close of evidence, that he still doubted the authenticity of the article.

. Although we recognize that the Sixth Circuit held that one fabricated newspaper article was sufficient to support a frivolousness finding, we do not consider the opinion to be persuasive, as it predates Y-L and was based on the lower substantial evidence standard. See Selami v. Gonzales, 423 F.3d 621, 626-27 (6th Cir.2005). The fact that the Selami court required the frivolousness finding to be based on direct evidence, and that BIA and this circuit permit such a finding to be based on circumstantial evidence, is irrelevant to the unquestionable proposition that substantial evidence is a lower evidentiary standard than a preponderance of the evidence.

. The government focuses on discrepancies between dates on translated employment records presented by Khadka and translated employment records presented by the government. As is clear from other documents on the record, Nepal uses a different calendar system than the United States. As far as we are able to discern from the translated documents, Nepalese and Gregorian dates are approximately fifty-six years, eight months, and two weeks apart, though the exact difference varies from month to month and year to year. Moreover, Nepalese uses non-Arabic numerals, making conversion and translation from a Nepalese date even more difficult to do without error. Nor does the government explain why Khadka might have fabricated dates nearly identical to those in government submitted documents. Given this, it is difficult to see how discrepancies of one day to one week, or even in one case three years, between translated documents submitted by each party, could possibly constitute more than the barest evidence of fraud. This is all the more true here, where Khadka presented a copy of the original Nepalese employment records and the government presented only a translation.

. In making his adverse credibility determination, the IJ also concluded that Khadka lied about his encounters with Maoists because Brault had not found any newspaper accounts to confirm any police-Maoist encounters on June 15, 1998 and July 5, 1999. In her dissent, Judge Hall also focuses on the U.S. embassy’s lack of evidence of any Maoist encounters on these dates. It is understandable why, based on the translation of the Tamn article, Brault, the IJ, and Judge Hall assumed that Khadka claimed to have encountered Maoists on those dates. (Translation: “He had played special role as a striking commander and made great loss to Maoist in Chitwan and Pyuthan district on June 15, 1998 and July 05,1999, when he was Police Inspector.”). Without knowing the grammatical structure of written Nepalese, it is only possible to speculate why the dates do not appear next to the words that they modify. But it is clear from his employment history and testimony, if not from the article itself, that those were the dates Khadka had been deployed as a Striking Commander. Thus, Brault’s inability to find specific encounters on those dates is not relevant to the question *1004 of whether or not Khadka manufactured his claim.