HALL, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority that the IJ’s adverse credibility finding was supported by substantial evidence. I dissent, however, from Section III of the majority opinion, because the IJ properly found that Khadka submitted a frivolous asylum application.
I.
Khadka seeks asylum on the grounds that Maoists in Nepal have threatened him and his family in retaliation for his victories combating Maoist rebels. His asylum application traces Maoist animosity towards him to encounters on June 15, 1998 and July 5, 1999 in the Chitwan and Pyuthan districts, in which Khadka, serving as a striking commander, defeated and killed a number of Maoists. Khadka’s primary corroborating evidence for these incidents was an article purportedly published in the Tarun newspaper, which reported both these two incidents and the resulting threats to his life. He submitted additional letters from family and friends documenting threats lodged at them by Maoists, but these letters do not identify any specific incidents of Maoist counterinsurgency apart from the June 15, 1998 and July 5,1999 incidents.
Khadka signed a Form 1-589 asylum application, which indicated that the knowing submission of a frivolous asylum application would render him permanently ineligible for relief under the Immigration and Nationality Act. On the same page, Khadka’s attorney signed a certification that he had read the application to Khadka in his native language.
On September 30, 2003, the government submitted evidence to the immigration court — including an affidavit from Steven F. Brault, Chief of the Consulate Section of the U.S. Embassy in Kathmandu — indicating that the Tarun article had been fabricated. On October 10, 2003, the IJ granted Khadka a continuance of his merits hearing so that his counsel could conduct his own investigation into the origins of the Tarun article. On April 22, 2004, the IJ devoted an entire day’s hearing to the authenticity of the Tarun article, including testimony from both Brault and Khadka’s own expert witness. As the majority sets forth in detail, Brault’s testimony demonstrated that the Tarun article had been published in a special version of the newspaper for the sole purpose of assisting Khadka’s asylum claim. The majority makes only passing reference, however to Brault’s testimony that the reported June 15, 1998 and July 5, *1006 1999 Maoists incidents never happened. Brault testified that the U.S. Embassy maintains a comprehensive database of Maoist incidents in Nepal and that there was no evidence of any run-in between police forces and Maoists on or around June 15, 1998 or July 5, 1999. He testified that during the period of 1996-2001, there were very few incidents with Maoist insurgents and that every Maoist incident would have been reported in one of the newspapers used to construct the database. The IJ found, based in large part on Brault’s testimony, that Khadka was not credible and had submitted a frivolous asylum application.
II.
Under 8 U.S.C. § 1158(d)(6), if an asylum applicant knowingly files a frivolous application, he or she is permanently ineligible for immigration benefits. “[A]n asylum application is frivolous if, any of its material elements is deliberately fabricated.” 8 C.F.R. § 1208.20. Under the four-part test we adopted in Ahir v. Mukasey, 527 F.3d 912, 917 (9th Cir.2008), the majority concludes that the IJ’s frivolousness finding was inadequate because (1) Khadka was given insufficient notice that the IJ was considering a frivolousness finding, and (2) fabrication of material evidence— here, the Tarun article — does not necessarily constitute fabrication of a material element of an asylum application. I disagree on both counts.
A.
Khadka had sufficient notice of the consequences of filing a frivolous asylum application and was well aware that the authenticity of the Tarun article was at issue. Khadka’s Form 1-589 asylum application warned that he would be permanently barred from relief under the INA if he filed a frivolous application, and Khadka’s attorney signed a certification that Khadka had been read his application in his native language.
The Tenth Circuit has explicitly held that the Form 1-589 warning is sufficient notice of the consequences of a frivolous application. Ribas v. Mukasey, 545 F.3d 922, 929-30 (10th Cir.2008). As Ribas acknowledges, the governing statute seems to require only written notice of the consequences of a frivolous application. See 8 U.S.C. 1158(d)(4)(A) (At the time of filing an application for asylum, the Attorney General shall ... advise the alien ... of the consequences ... of knowingly filing a frivolous application for asylum); 8 U.S.C. 1158(d)(6) (If the Attorney General determines that an alien has knowingly made a frivolous application for asylum and the alien has received the notice under paragraph (4) (A), the alien shall be permanently ineligible for any benefits under this chapter) (emphasis added). Although the BIA has stated that it is a “good practice for an Immigration Judge who believes that an applicant may have submitted a frivolous application to bring this concern to the attention of the applicant prior to the conclusion of the proceedings,” In re Y-L, 24 I. & N. Dec. 151, 159-60, the BIA did not state, nor have we, that an oral, as opposed to written, advisement is absolutely necessary. See id. at 160 n. 3 (“There may be situations in which the deliberate falsification of material aspect of the asylum claim is so clear on the record that a formal request for an explanation would be a needless exercise.”).[1]
*1007 Khadka had ample opportunity to address the authenticity of the Tarun article, including the underlying “facts” it reported. The IJ granted the parties a series of continuances to investigate the article and obtain expert witnesses, and an entire day’s hearing was devoted solely to the topic. At the hearing, there was no indication that Khadka was denied any opportunity to fully develop the testimony of either the government’s or his own expert. Khadka was aware that there were serious doubts regarding the veracity and authenticity of the Tarun article, had notice of the serious consequences of submitting false evidence, and both parties dedicated substantial time and resources to the genesis of the disputed article.
B.
The majority alternatively argues that Khadka’s submission of a fabricated newspaper article was insufficient evidence to support a frivolousness finding. Although the Tarun article is material evidence of persecution, the majority concludes that Khadka did not falsify a material element of his asylum application, given the existence of other corroborating evidence.
The majority provides thin support for distinguishing between “material evidence” and a “material element,” and case law does not seem to require such parsing. In Selami v. Gonzales, 423 F.3d 621, 626 (6th Cir.2005), the Sixth Circuit upheld a finding of frivolousness based upon the submission of fraudulent newspaper article', reasoning that the article “was submitted by Selami to corroborate the core elements of his asylum claim.”[2] Even though there may have been other evidence to support Selami’s asylum application, the newspaper article went to the heart of his claim and therefore its fabrication was a fabrication of a “material element.” Similarly here, Khadka argues that Maoists have targeted him and his family as a result of his counter-insurgency successes, and he introduced the Tarun article specifically to corroborate this story. Khadka’s submission of a fraudulent newspaper article to corroborate a core element of his claim is sufficient to support a frivolousness finding.
The majority also overstates the significance of the remainder of Khadka’s documentary evidence. Although the record is “replete with Nepalese and United Nations employment records” indicating that Khadka was assigned to anti-terrorist units, Maj. Op. at 1004, the fact that he may have held these positions does not demonstrate that he actually had any significant interactions with Maoist rebels. The “affidavits of friends and family about Maoist threats,” id.; do broadly declare Maoists’ desire for retribution against Khadka as well as the purported subjective fears of Khadka’s family members, but they similarly lack any persuasive basis for concluding that Khadka had ever in fact “made great loss” against the insurgents *1008 as set forth in the Tarun article.[3] The many “general newspaper articles about Maoists,” id., also fail to persuasively support a particularized fear of persecution.
Given the lack of any other documentary evidence of particular encounters with Maoists, it is hard to imagine how the Tarun article could be more central to Khadka’s asylum application. If the fabrication of the Tarun article is insufficient to support a frivolousness finding, it is difficult to imagine how pervasively and egregiously false an asylum application would need to be in order to satisfy the majority’s standard.
III.
For the foregoing reasons, I dissent in part from the majority opinion.

. The Ahir decision acknowledged that the warning in Form 1-589 might provide sufficient notice of the consequences of filing a frivolous application, but it did not decide the issue. 527 F.3d at 917-18.

. The majority summarily rejects the Selami decision because it predates the BIA’s decision in Y-L and was based on a lower substantial evidence standard. Maj. Op. at 1002 n. 5. I disagree with this reasoning. Our decision in Ahir specifically addressed the Sixth Circuit’s decision in Selami. The Ahir panel noted that prior to Y-L other circuits upheld frivolousness findings only if an applicant had submitted fraudulent extrinsic evidence or made an explicit admission of untruthfulness. 527 F.3d at 918. The panel held, however, that the Y-L test did not require such a stringent showing, and that a frivolousness finding could be based on both direct and circumstantial evidence. Id. Although the Sixth Circuit in Selami stated that "the IJ’s finding was supported by substantial evidence,” 423 F.3d at 626, it actually imposed a evidentiary standard that was more stringent that the standard adopted in Y-L and Ahir.

. Khadka’s wife submitted a letter mentioning the June 15, 1998, and the July 5, 1999, incidents, but she specifically references the Tarun article, substantially undermining her credibility. Perhaps the strongest documentaiy evidence is an "appraisal” letter directed to Nepalese police headquarters, relating Khadka’s "effective role in order to control the activities of the Maoists in this district.” Although the article mentions the arrest of a single Maoist and obtaining some "good intelligence,” there is nothing in the article specifying any major combat efforts led by Khadka.