**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2200
_____

RETNO MAWARSARY; FNU EFFENDI,
                                        Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A079-318-293 and A079-318-294)
Immigration Judge:  Honorable Rosalind K. Malloy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 20, 2011

Before:  McKEE, Chief Judge, SMITH and GARTH, Circuit Judges

(Opinion filed:  April 21, 2011)
_____

OPINION
_____

PER CURIAM

        Petitioners Fnu Effendi and Retno Mawarsary petition for review of a final

removal order issued by the Board of Immigration Appeals ("Board" or "BIA") denying

their applications for asylum, withholding of removal, protection under the Convention

Against Torture ("CAT"), and voluntary departure. We will affirm.

I.

Effendi and Mawarsary, husband and wife, are Indonesian citizens of Chinese ethnicity. They entered the United States in April 1999, but failed to timely depart. In April 2001, Mawarsary filed an application for asylum and related relief with the former Immigration and Naturalization Service, now the United States Department of Homeland Security ("DHS"). She included an affidavit with her application, claiming that in April 1999 a taxi driver sexually assaulted her, targeting her specifically because she is Chinese. In June 2001, an asylum officer interviewed Mawarsary, declined to grant her asylum, and referred her application to the immigration court.

In July 2001, DHS issued both Petitioners Notices to Appear, charging them with removability pursuant to INA § 237(a)(1)(B), for having remained in the United States longer than permitted. In March 2004, Mawarsary conceded removability and renewed her applications for relief. Effendi separately filed applications for asylum, withholding of removal, CAT protection, and voluntary departure based on his Chinese ethnicity and because he is a Christian.

Prior to the administrative hearing, DHS submitted evidence to the immigration court indicating that an employee of the Chinese Indonesian American Society ("CIAS") had prepared Mawarsary's asylum application. Between 1999 and 2004, several CIAS employees, including the employee who prepared Mawarsary's application, were arrested and convicted of defrauding the U.S. Government and the Commonwealth of Virginia by

2

preparing and submitting fraudulent asylum applications. DHS also submitted evidence showing that Mawarsary's affidavit was identical to an affidavit prepared by CIAS that had previously been deemed fraudulent.

At Petitioners' merits hearing, the Immigration Judge ("IJ") gave Mawarsary an opportunity to withdraw or revise her affidavit in light of DHS' evidence. She declined to do so and Petitioners proceeded to testify on their own behalf. A psychologist, Dr. Judy Eidelson, also testified on behalf of Petitioners at the hearing.

Mawarsary claimed that, in 1999, a taxi driver took her to an isolated area, threatened her with a knife, and forced her to perform sexual acts. After he left, Mawarsary testified that she walked to a nearby home, where she slept overnight. The next morning, she called Effendi, who picked her up and took her to the police station to file a report. Later that month, she alleged that the police told her that they had not yet apprehended her attacker and she did not inquire further about the status of her complaint.

Effendi also alleged that he was harmed in Indonesia. He claimed that during the widespread riots that took place in Indonesia in May 1998, he was caught in the middle of a violent anti-government student demonstration. He alleged that the students pulled him out of his car, beat him, and threatened to kill him because he is Chinese. Effendi claimed that he passed out, but later awoke in a hospital with his front teeth knocked out. The hospital discharged him later that day.

Dr. Eidelson testified that, in September 2003, she interviewed Mawarsary for two

hours.  Based on that interview, she diagnosed her with Post Traumatic Stress Disorder ("PTSD") stemming from the incident involving the taxi driver, and a previous incident when she was attacked while riding on a bus in Indonesia.  Dr. Eidelson testified that Mawarsary appeared credible during their meeting.

Following the merits hearing, the IJ denied Petitioners' applications for relief and ordered them removed to Indonesia.  She first determined that they were statutorily ineligible for asylum because they failed to file their applications within one year of entering the United States.  She also determined that Petitioners knowingly filed a frivolous application for asylum.[1]

The IJ further concluded that Mawarsary's claim of past persecution was not credible, and that Effendi's experiences in Indonesia did not rise to the level of persecution.  As to both Petitioners, the IJ held that they failed to establish a clear probability of future persecution, or torture, so as to qualify for withholding of removal or CAT protection.  Finally, she denied their requests for a grant of voluntary departure.

The BIA dismissed in part, and sustained in part, Petitioners' appeal.  The Board affirmed the IJ's finding that Petitioners were statutorily ineligible for asylum and that they were unable to qualify for an exception to the filing time-bar.  However, the Board sustained Petitioners' challenge to the IJ's finding that they filed a frivolous asylum application.  The Board affirmed the IJ in all other respects.

---

[1] An asylum application is frivolous if any of its material elements is deliberately fabricated.  8 C.F.R § 208.20.

4

II.

This Court has authority to review final orders of removal. See 8 U.S.C. § 1252(a). We will review the immigration judge's opinion to the extent it was adopted by the BIA. See Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001). "We apply substantial evidence review to agency findings of fact, departing from factual findings only where a reasonable adjudicator would be compelled to arrive at a contrary conclusion." Mendez-Reyes v. Att'y Gen., 428 F.3d 187, 191 (3d Cir. 2005). We "uphold the findings of the [IJ and] BIA to the extent that they are supported by reasonable, substantial and probative evidence on the record considered as a whole[.]" Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003).

III.

Petitioners' sole argument on appeal is that the BIA erred when it "incorporated the IJ's finding that Petitioners submitted a frivolous finding in its analysis of whether or not [they] are entitled to withholding of removal – despite the fact that the IJ had exceeded her authority in determining the applications to be frivolous."[2] (Petitioners' Brief ("Pet. Br.") at 6.) Petitioners suggest that the BIA's ruling ran afoul of our holding in Luciana v. Att'y Gen., 502 F.3d 273, 280 (3d Cir. 2007). After reviewing the record,

---

[2] We note that Petitioners have waived review of the agency's denial of their applications for asylum, CAT protection, and voluntary departure. See United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").

we conclude that Petitioners' argument is without merit.

In <u>Luciana</u>, we determined that because the petitioner was statutorily time-barred from filing her asylum application, the falsehood at issue in her case was "incapable of influencing the decision-makers, and therefore it was not material." <u>Id.</u> Because it was not material, it "was an error of law" to conclude that her asylum application was frivolous. <u>Id.</u> Here, the Board correctly applied <u>Luciana</u> and determined that the IJ erred in ruling that that Petitioners' time-barred asylum application was also frivolous.

Contrary to Petitioners' assertion, the BIA did not then incorporate the IJ's improper frivolous finding into its separate analysis of Petitioners' eligibility for withholding of removal. Instead, the Board determined that the record as a whole, including evidence that Mawarsary's claim of past persecution was fabricated, supported the IJ's finding that Petitioners failed to meet their burden of proof under the withholding of removal standard.[3] (A.R. 4-5.) Petitioners do not dispute the agency's credibility determination, nor do they argue that the evidence they presented established a clear probability of persecution on account of an enumerated ground.[4]

---

[3] Withholding of removal is mandatory once "the Attorney General decides that the alien's life or freedom would be threatened in that country" on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3). To obtain such relief, the applicant must establish by a "clear probability" that it is more likely than not that he or she would suffer persecution upon return to his or her country. <u>Kaita v. Att'y Gen.</u>, 522 F.3d 288, 296 (3d Cir. 2008).

[4] Indeed, the IJ explicitly noted that conditions have improved for Indonesian

6

Instead, they appear to argue that the agency was precluded from assessing their credibility in order to determine their eligibility for withholding of removal. See Pet. Br. at 10-11. However, we have held that "credibility, by itself, may satisfy [an applicant's] burden or doom his claim as to both withholding of removal and protection under the [CAT]." See Muhanna v. Gonzales, 399 F.3d 582, 589 (3d Cir. 2005). Furthermore, a finding of adverse credibility is not the same as a finding that that an alien has submitted a frivolous asylum application. See Luciana, 502 F.3d at 278, Khadka v. Holder, 618 F.3d 996, 1002 (9th Cir. 2010). We discern no error on the part of the BIA regarding its review of Petitioners' eligibility for withholding of removal.

Accordingly, we will deny the petition for review. Petitioner's motion to stay the final order of removal is denied as moot.

---

citizens of Chinese ethnicity since Petitioners left the country in 1999, and that Petitioners' family members have remained in Indonesia unharmed. (A.R. 287-88.) Thus the BIA agreed with the IJ's analysis and that there was little likelihood that Petitioners will be persecuted if returned to Indonesia.