FILED

AUG 23 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

YANYUN REN,

    Petitioner,

 v.

ERIC H. HOLDER, Jr., Attorney General,

    Respondent.

No. 07-70701

Agency No. A078-706-866

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 5, 2011
Pasadena, California

Before: PREGERSON, FISHER, and BERZON, Circuit Judges.

 Yanyun Ren petitions for review of a decision of the Board of Immigration

Appeals (BIA) affirming an Immigration Judge's (IJ) denial of her application for

asylum, withholding of removal, and relief under the United Nations Convention

Against Torture (CAT). We deny the petition.

---

  [*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

The IJ provided "specific and cogent reasons" for the adverse credibility finding. *Kaur v. Gonzales*, 418 F.3d 1061, 1064 (9th Cir. 2005). Principally, the forensic document expert produced a report concluding that the receipt for a fine, introduced by Ren, was almost surely fraudulent, and, while impossible to authenticate, the summons offered by Ren may well not have been genuine either. While testifying, the expert explained in detail how she arrived at her conclusions, elaborating that there was an estimated 1 in 100,000 chance the receipt was not fraudulent and a 1 in 200 chance the summons was genuine. Ren produced no contrary evidence undermining those conclusions. The IJ was therefore justified in relying on them.

Because these fraudulent documents called into doubt the truthfulness of Ren's account of her arrest, they went to the heart of her claim, *see Kin v. Holder*, 595 F.3d 1050, 1058 (9th Cir. 2010), and could support the IJ's adverse credibility finding. *See Yeimane-Berhe v. Ashcroft*, 393 F.3d 907, 911 (9th Cir. 2004). Ren testified that she personally received the summons on the day of her release and saw the receipt for the fine in her father's hand when he came to get her from police custody. Ren's argument that she did not know the documents were fraudulent would have required the IJ to accept the unlikely inference that she and her father received genuine documents, but her father mailed her different,

fraudulent copies without notifying her they were not the originals. Therefore, unlike in *Yeimane-Berhe*, where someone obtained the fake document outside the petitioner's presence and after she was in the United States, and "no evidence indicat[ed] that [the petitioner] knew the document was fraudulent," *id.* at 911, the evidence here supports the conclusion that Ren probably had to be aware the documents were not genuine. *See Khadka v. Holder*, 618 F.3d 996, 1001 (9th Cir. 2010) (holding that expert testimony combined with a petitioner's failure to offer a plausible explanation for how he obtained a fraudulent newspaper article was sufficient to support an adverse credibility determination, even where the IJ did not make a specific finding that the petitioner knew the article was not genuine).

Moreover, unlike in *Yeimane-Berhe*, where authentic documentary evidence corroborated the petitioner's account, and "nothing else in the record" undermined the petitioner's credibility, 393 F.3d at 911, the IJ here had other bases to question Ren's testimony. For instance, Ren's application originally stated she was detained in Linan, and she did not amend that statement during her asylum office interview, although she did make several other changes to her application. Only after receiving the summons in the mail from her father did she change the statement to say she was detained in Kuaian, reconciling her application with the summons. Ren's suggestion that her first submission might have been a translation

error does not explain that timing issue; any translation error presumably could have been caught earlier.

Likewise, Ren failed to advance evidence corroborating her claims that she attended church or practiced Christianity in the United States or China. *See Unuakhaulu v. Gonzales*, 416 F.3d 931, 938 (9th Cir. 2005) (acknowledging that, "where the IJ has reason to question the applicant's credibility," a petitioner's failure "to produce non-duplicative, material, easily available corroborating evidence" can support an adverse credibility determination (quotations omitted)). Although her work schedule prevented her from attending church on a weekly basis, she testified that she worshiped there every three or four weeks. Over the course of the three years she had been in the United States, that attendance rate is not so infrequent as to prohibit her from obtaining some corroborating documentation.

In the absence of credible testimony or reliable documentary evidence, Ren's claims for asylum and withholding fail. Because her CAT claim is also based on her testimony, it fails as well. *See Almaghzar v. Gonzales*, 457 F.3d 915, 922–23 (9th Cir. 2006).

**PETITION DENIED.**

No. 07-70701 *Ren v. Holder*

PREGERSON, Circuit Judge, Dissenting:

Petitioner Yanyun Ren is a native and citizen of China. Ren converted to Christianity in 2001. On November 18, 2001, Ren was attending a house church service when Chinese police arrested her and her fellow congregants. During her detention, two officers interrogated Ren, accused her of belonging to an "illegal gathering," spreading "an evil cult," and "disturbing social stability." The officers demanded that Ren provide information about the organization of the church. When Ren refused to answer the officers' questions and asked why she was being detained, the officers slapped Ren several times and pulled her hair. The officers then placed Ren in a small cell with two other women. The officers instructed the two other women in the cell to mistreat Ren. Over the next fifteen days, the two women in the cell routinely beat Ren, forced her to eat her food off of the floor, and prevented her from sleeping. Ren was finally released from custody after her father paid a fine. She left China and ultimately arrived in the United States in 2002. Ren timely applied for asylum, withholding of removal, and protection under the Convention Against Torture.

An Immigration Judge (IJ) found that Ren's testimony was not credible, in reliance, principally, on an expert's testimony about the inauthenticity of

1

documents—a summons and a receipt for payment of a fine—Ren submitted with her application. While the expert had misgivings about the authenticity of the summons Ren received upon her release, the expert conceded that the summons—the only document handed directly to Ren—could have been reproduced on a copier. Additionally, the fine receipt, which the expert more strongly believed to be counterfeit, was given to Ren's father, outside of Ren's presence. There is no indication in the record that Ren had possession of the fine receipt before it was mailed to her by her father after she arrived in the United States. Moreover, even if both the summons and the fine receipt were fraudulent, there was no evidence offered, and the IJ made no finding, that Ren knew that the documents were not genuine. *See Yeimane-Berhe v. Ashcroft*, 393 F.3d 907, 911 (9th Cir. 2004).

The other grounds the IJ relied upon for her adverse credibility determination are either speculative or do not go to the heart of Ren's asylum claim. *See Manimbao v. Ashcroft*, 329 F.3d 655, 660 (9th Cir. 2003); *Shah v. INS*, 220 F.3d 1062, 1071 (9th Cir. 2000). Moreover, the IJ failed to address Ren's proffered explanations for the perceived inconsistencies, and thus, the IJ's findings must be disregarded. *See Soto-Olarte v. Holder*, 555 F.3d 1089, 1091 (9th Cir. 2009); *Kaur v. Ashcroft*, 379 F.3d 876, 884 (9th Cir. 2004).

2

For these reasons, I would grant the petition for review, reverse the adverse credibility finding, and remand to the BIA for further proceedings. *See Tekle v. Mukasey*, 533 F.3d 1044, 1056 (9th Cir. 2008). I therefore respectfully dissent.